IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

COURT OF APPEALS NO.: 11-15989-FF

UNITED STATES OF AMERICA
Plaintiff-Appellee

vs.

ROBERT ALLAN COWAN
Defendant-Appellant

INITIAL BRIEF OF APPELLANT

A DIRECT APPEAL OF A CRIMINAL CASE FROM THE UNITED STATES
DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:09-cr-00387-TJC-MCR-1

Noel G. Lawrence, Esquire
101 East Union Street, Suite 200
Jacksonville, Florida 32202
Florida Bar No.:    844251
Telephone:  (904) 356-9928
Facsimile:   (904) 356-6762
Email:        NGLAWREN@prodigy.net
*Attorney for Appellant/Defendant, Robert A. Cowan*

DATE:       April 12, 2012

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1, I hereby certify as the Counsel for the

Appellant hereby lists the following parties interested in the outcome of this case:

1. David Rodney Brown, Trial Assistant United States Attorney

2. Honorable Timothy J. Corrigan , United States District Judge

3. Robert Allan Cowan, Appellant

4. Borden Rhea Hallowes, Former Trial Counsel

5. Judy K. Hunt, Assistant United States Attorney

6. Noel G. Lawrence, Sentencing and Appellate Counsel

7. Minor victims whose identities are protected

8. Robert E, O'Neill, United States Attorney

9. David P. Rhodes, Assistant United States Attorney, Chief, Appellate

   Division

10. Honorable Monte C. Richardson, United States Magistrate Judge

11. Charles L. Truncale, Former Trial Counsel

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant respectfully requests oral argument before this court on all issues raised herein. The legal issues involved requires a careful application of the law to the facts. Counsel submits that his familiarity with the issues will substantially assist this Court in its resolution of the issues.

## CERTIFICATE OF TYPE SIZE AND STYLE

The Appellant, by and through his undersigned counsel, certifies that 14 point Times New Roman (proportionate spaced print) has been used throughout the Initial Brief of Appellant. References to the record in this brief will be designated By "TR-1-1, 2" with TR representing the trial record transcript volume 1 followed by the page number or SR representing the sentencing record transcript or in the alternative, the Document Number ("Doc.") assigned by the clerk in the lower court. The number after the comma represents the line number. "PSI" or "PSR" refers to Presentence Investigation Report. Any transcripts of a hearing may be alternatively cited by the name of the hearing followed by the date and page.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . ii

CERTIFICATION OF TYPE SIZE AND STYLE. . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

TABLE OF RECORDS REFERENCE(S). . . . . . . . . . . . . . . . . . . . . . . . . . . . .ix

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.. . 1

STATEMENT OF THE ISSUE(S). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE AND FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 3

      (i)    COURSE OF PROCEEDINGS AND DISPOSITION

           IN THE COURT BELOW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

      (ii)   STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . . . 14

      (iii)  STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

SUMMARY OF THE ARGUMENT(S). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ARGUMENT(S). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

iv

**ARGUMENT(S):**

**1.    THE ALLEGED EXPERT TESTIMONY WAS IMPROVIDENT AND IMPROPER**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**2.    THE TRIAL EVIDENCE WAS EQUIVOCAL, INCREDIBLE AND UNWORTHY OF BELIEF**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**3.    COWAN'S 1,680 MONTHS SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SINCE THE DISTRICT COURT FAILED TO PROPERLY APPLY THE SENTENCING GUIDELINES, TO EXERCISE INDIVIDUALIZED DISCRETION AND TO PROPERLY CONSIDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

RULE 28-1 (m) CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . 59

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .59

## <u>TABLE OF CITATIONS</u>

### CASES

*Bonner v. City of Prichard*, 661 F. 2d 1206, 1207 (11th Cir. 1981) . . . . . . . . . . 30

*Daubert v. Merrell*, 509 U.S. 579, 589 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007). . . . . . . . . . . . . . 30

*Glasser v. United States,* 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Rita  v. United States,* 551 U.S. 338, 127 S. Ct. 2456 (2007). . . . . . . . . . . . . . . 32

*United States v. Anderson*, 326 F.3d 1319, 1331 (11th Cir. 2003). . . . . . . . . . . .40

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982). . . . . . . . . . . . . 29

*United States v. Booker*, 543 U.S. 220, 261, 125 S. Ct. 738, 765-66 (2005)).. 30,32

*United States v. Bobb*, 577 F.3d 1366 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . 36

*United States v. Campbell,* 491 F.3d 1306, 1313, 1315 (11th Cir. 2007). . . . . . . 31

*United States v. Canada*, 110 F.3d 260,264 (5th Cir.), cert. denied, U.S. , 118 S. Ct. 195, 139 L. Ed. 2d 133 (1997), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*United States v. Cole*, 61 F.3d 24, 24 (11th Cir.1995) . . . . . . . . . . . . . . . . . . . . 42

*United States v. Cover,* 199 F.3d 1270, 1274 (11th Cir. 2000). . . . . . . . . . . . . . .29

*United States v. Davis*, 666 F.2d 195, 201 (5th Cir. Unit B 1982). . . . . . . . . . . .29

*United States v. Dobbs*, 11 F.3d 152 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . 46

*United States v. Dunlap*, 279 F.3d 965 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . 41

*United States v. Dunnigan,* 507 U.S. 87, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .46

*United States v. Frazier,* 387 F.3d 1244, 1258 (11th Cir. 2004) . . . . . . . . . . . . .29

*United States v. Grigg,* 442 F.3d 560 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . .50

*United States v. Gaudin,* 515 U.S. 506, 132 L. Ed. 2d 444, 115 S. Ct. 2310. . . . . . . . . . . 35

*United States v. Hasner*, 340 F.3d 1261, 62 Fed. R. Evid. Serv. 213 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Keller,* 916 F.2d 628, 632 (11th Cir. 1990). . . . . . . . . . . . . . . . 29

*United States v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995). . . . . . . . . . . . . . . . .41,42

*United States v. Krawczak*, 331 F.3d 1302, 1305 (11th Cir. 2003). . . . . . . . . . . 28

TABLE OF CITATIONS (continued)
## CASES

*United States v. Marx,* 635 F.2d 436, 438 (5th Cir. Unit B Jan. 1981) . . . . . . . .30

*United States v. Mauldin*, 224 Fed. Appx. 915 (11th Cir. 2007). . . . . . . . . . . . .45

*United States v. Pruitt*, 638 F.3d 763No: 10-10829 (11th Circuit April 13, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

*United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987). . . . . . . . . . . . . . .29

*United States v. Perez*, 350 Fed. Appx. 425, 430 (11th Cir. Fla 2009). . . . . . . . 47

*United States v. Pintado*, 715 F.2d 1501, 1503 (11th Cir. 1983) . . . . . . . . . . . . .29

*United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989). . . . . . . . . . . . . . .29

*United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). . . . . . . . . . . . . . .30

*United States v. Romm,* 455 F.3d 990, 998 (9th Cir. 2006). . . . . . . . . . . . . . .36,45

*United States v. Saylor,* 959 F.2d 198, 200 (11th Cir.1992). . . . . . . . . . . . . . . . 42

*United States v. Talley*, 431 F.3d 784, 787 (11th Cir. 2005). . . . . . . . . . . . . . . . 31

*United States v. Tucker*, 136 F.3d 763 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . .41

*United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983) . . . . . . . . . . . . . . .30

*United States v. Vallejo*, 297 F.3d 1154 (11th Cir. 2002). . . . . . . . . . . . . . . . . . 47

## STATUTES

18 U.S.C. § 1466A(b)...................................................................48

18 U.S.C. § 2246.........................................................................49

18 U.S.C. § 2251(a).............................................................Passim

18 U.S.C. § 2252(a)(2).........................................................Passim

18 U.S.C. § 2252(a)(4)(B)...................................................3,4,24

18 U.S.C. § 3553(a).............................................................Passim

18 U.S.C. § 3553(c)(2)....................................................... 33,39

18 U.S.C. § 3742..........................................................................1

28 U.S.C. § 1291..........................................................................1

## ADDITIONAL AUTHORITIES

U.S.S.G. § 1B1.1..........................................................................40

U.S.S.G. § 1B1.1(a)(2)................................................................40

U.S.S.G. § 2G2.1..........................................................................49

U.S.S.G. § 2G2.1(b)(2)(A)..........................................................49

U.S.S.G. § 2G2.2..........................................................................40

U.S.S.G. § 2G2.2(a)(1)................................................................40

**ADDITIONAL AUTHORITIES** (continued)

U.S.S.G. § 2G2.2(a)(2)..............................................................40

U.S.S.G. § 2G2.2(b)(1)..............................................................47

U.S.S.G. § 2G2.2(b)(4)..............................................................41

U.S.S.G. § 2G2.2(b)(5)..............................................................43

U.S.S.G. § 2G2.2(b)(7)(D).......................................................44,45

U.S.S.G. § 3C1.1.......................................................................45

U.S.S.G. § 3D1.1(b)(1)..............................................................51

U.S.S.G. § 3D1.2...................................................................50,51

U.S.S.G. § 3D1.2(d)...................................................................41

U.S.S.G. § 3D1.4.......................................................................50

# **TABLE OF RECORD REFERENCE(S)**

DOCUMENT NUMBER                                    PAGE NUMBER(S)

1              Indictment                                          3-4

66             Clerk's Minutes Jury Trial commenced on 10/4/10      4

71             Court's Jury Instructions                            35

72             Jury Verdict                                         4

74             Adjudication of Guilt and Notice of Sentencing       23

89             Transcript of Trial Proceedings (Volume II of IV)    14-23

123            Judgment                                             1,4

124            Notice of Appeal                                     1

131            Transcripts of Redacted Sentencing Hearing           45,48

ix

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

This court has jurisdiction over the appeal in this case under 28 U.S.C. 1291. The appeal is a direct criminal appeal from a jury trial and sentencing hearing before the Honorable Timothy J. Corrigan, in the United States District Court for the Middle District of Florida. Jurisdiction in the district court arose from the charging of a criminal offense by the United States, a party. Appellate jurisdiction is based upon appellant's statutory right to appeal pursuant to Title 18 U.S.C. Section 3742. Notice of appeal was deemed timely filed on December 19, 2011 (Doc. 126) within ten days of the entry of the Judgment and Sentence by the district court; the judgment was entered on December 5, 2011. (Doc. 123) This appeal is from a final order.

STATEMENT OF THE ISSUE(S)

**I.    WHETHER THE ALLEGED EXPERT TESTIMONY WAS IMPROVIDENT AND IMPROPER.**

**II.    WHETHER THE TRIAL EVIDENCE WAS EQUIVOCAL, INCREDIBLE AND UNWORTHY OF BELIEF.**

**III.    WHETHER COWAN'S 1,680 MONTHS SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SINCE THE DISTRICT COURT FAILED TO PROPERLY APPLY THE SENTENCING GUIDELINES, TO EXERCISE INDIVIDUALIZED DISCRETION AND TO PROPERLY CONSIDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a).**

STATEMENT OF THE CASE AND FACTS

**(i)    Course of the Proceedings and Dispositions in the Court Below.**

On December 9, 2009, Robert Allan Cowan, was named in a seven-count

Indictment returned by a Middle District of Florida grand jury. (Doc. 1) The

Indictment contained a provision of forfeiture. *Id.* The specifics of the charges are

outlined below:

| Count | Date/Location of Offense | Charge | Statutes Violated |
|-------|--------------------------|--------|-------------------|
| One | July 25, 2008 Jacksonville, Middle District of Florida | Receiving Child Pornography | 18 U.S.C. § 2252(a)(2) |
| Two | July 26, 2008 Jacksonville, Middle District of Florida | Receiving Child Pornography | 18 U.S.C. § 2252(a)(2) |
| Three | June 19, 2008 Jacksonville, Middle District of Florida | Receiving Child Pornography | 18 U.S.C. § 2252(a)(2) |
| Four | August 14, 2009 Jacksonville, Middle District of Florida | Using a Minor to Engage in Sexual Explicit Conduct for the Purpose of Producing Child Pornography | 18 U.S.C. § 2251(a) |
| Five | August 14, 2009 Jacksonville, Middle District of Florida | Using a Minor to Engage in Sexual Explicit Conduct for the Purpose of Producing Child Pornography | 18 U.S.C. § 2251(a) |
| Six | August 18, 2009 Jacksonville, Middle District of Florida | Possession of Child Pornography | 18 U.S.C. § 2252(a)(4)(B) |

3

| Seven | August 18, 2009 Jacksonville, Middle District of Florida | Possession of Child Pornography | 18 U.S.C. § 2252(a)(4)(B) |

The defendant entered a not guilty plea and proceeded to trial before Judge Corrigan. On October 7, 2010, the jury returned a verdict of guilty as to Counts One through Seven. (Docs. 66,72) On October 14, 2010, Judge Timothy J. Corrigan adjudicated the defendant guilty. (Doc. 74) On November 30, 2011, sentencing proceedings were held before Judge Corrigan, who sentenced Robert Allan Cowan as follows: Counts(s) 1-3, imprisonment: 240 months on each count; supervised release of life on each count; Count(s) 4-5, imprisonment: 360 months on each count; supervised release Life on each count; Count(s) 6-7, imprisonment: 120 months on each count;  (All such terms to run consecutively, for a total of 1,680 months); supervised release life on each count (all such terms to run concurrently); Special Assessment of $700.00. (Doc. 123) The court recommended confinement at FMC Devens, for intensive sexual offender treatment and decreed that Defendant not be allowed to have contact with former wife nor two children. Defendant was remanded to the custody of the United States Marshall ("USM").

## **Offense Conduct**[1]

On August 14, 2009, Robert Cowan had the responsibility of caring for his

---

[1]Most, if not all, of the facts herein taken verbatim from the PSI except where noted otherwise or deleted.

minor daughter who was four years of age. In the early morning hours of that day, the defendant took the child to Jacksonville Beach and left the area sometime later to return to his residence. The defendant transported the child in his vehicle, a Honda Accord. In transporting the child, the defendant assisted her to the backseat of the vehicle and strapped her into a seatbelt. The child was initially clothed in a wet bathing suit but at some point, the bathing suit was removed and the child was covered in a blue bathrobe only.

Beginning at 12:35 p.m., and continuing until 12:44 p.m., during the trip home, the defendant took several digital pictures of the child with his Apple iPhone. The defendant took photographs of the child while she was partially naked, and the images depicted the exhibition of her genitalia **(on the outside)**. Shortly thereafter, the defendant and the child arrived at the defendant's residence located at 15123 Reef Drive South in Jacksonville.

From 12:46 p.m., through 1:04 p.m, the defendant used his iPhone to take additional pictures of the child who was naked. The pictures again depicted the exhibit of the child's genitalia **(on the outside)**. The child assumed several different poses for the photographs. In one of the images, the child is depicted lying naked on a bathroom rug displaying her pubic area, and in another image the child is depicted with her hand on **(not inside)** her genitalia. After these images were produced by the defendant, he downloaded these images onto his Apple

iMac computer (17 inch screen), and subsequently transferred and saved them to a Toshiba external hard disk drive for storage. The defendant then attempted to delete the images from both his Apple iPhone and his Apple iMac computer.

On August 18, 2009, the defendant delivered the child to a daycare center on Starratt Road in Jacksonville. Upon arrival at the facility, the child asked the teacher if the teacher wanted to know how she and the defendant "make each other feel good." When the teacher replied in the affirmative, the child began by saying that they "rub each other" and that the defendant rubs her "twat." The child continued by stating the defendant's "fingernails hurt my twat." The child stated that the defendant then suggested that they "paused a video" and that they make their own videos. The child further related that the defendant made her put the defendant's private part in her mouth and that she was not allowed to use her teeth because it would hurt. The child indicated that this was something that she was not allowed to talk about at school and that her mother would be mad at her if she (mother) found out.

Faced with this information from the child, the teacher advised her supervisor, and they jointly contacted the Florida Department of Children and Families (DCF) abuse hotline. The DCF dispatched a child abuse investigator ("CPI") who coordinated her investigation with the Jacksonville Sheriffs Office

("JSO"), which dispatched a detective to investigate the complaint. The child was subsequently taken to the University of Florida First Coast Child Protection Team for a forensic examination. During an interview of the child, she told the investigators that she was allowed to watch a video of "a lady smaller than her making that lady's daddy feel good." She also indicated that the defendant put some purple "rubby stuff' on her "twat." The child also advised interviewers that she and the defendant were making a video in the defendant's (home) office of "us making each other feeling good." She also communicated to the interviewer that she has seen "stuff that is icky and white" coming from the defendant's penis, and that "it goes into a towel." The child indicated that the activity she described last took place on August 17, 2009.

Forensic investigation of the defendant's computers and other forms of media were performed by the case agent from the Department of Homeland Security. The following table provides specifics of the images of the child found on the defendant's Toshiba external hard-drive:

| Name of File | Description of Image |
| --- | --- |
| | |

| IMG_1495.JPG | Child shown from the neck down. Sitting in car seat with seat belt fastened, with her hands on her legs. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |
| --- | --- |
| IMG_1496.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded with fingers interlocked. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |
| IMG_1999.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded and fingertips touching on both hands. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |
| IMG_1500.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded and fingertips touching on both hands. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |

| | |
|---|---|
| IMG_1502.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded and fingertips touching on both hands. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. (orientation changed from portrait to landscape.) |
| IMG_1503.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded with fingers interlocked. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |
| IMG_1505.JPG | Child shown from the neck down. Sitting in car seat with seatbelt fastened, with hands folded with fingers interlocked. Camera focused on her stomach area. Wearing an open robe exposing genital region. Genital region visible as a focus of the camera. |
| IMG_1516.JPG | Child standing in hallway of Cowan residence. Robe is on ground by her feet; she is smiling while grabbing her genital region with right hand. |
| IMG 1520.JPG | Child lying completely nude on rug in master bath of Cowan residence; legs are slightly spread open, exposing genitals to camera. |

| IMG 1521.JPG | Child lying completely nude on rug in master bath of Cowan residence; legs are slightly spread open, exposing genitals to camera. |
|---|---|
| IMG_1522.JPG | Child lying completely nude on rug in master bath of Cowan residence; legs are slightly spread open, exposing genitals to camera. |
| IMG_1524.JPG | Child lying completely nude on rug in master bath of Cowan residence. Arms behind her back and she is arching her back to point to her genital region to the camera. Legs are slightly spread open, exposing her genitals to the camera. |
| IMG_1526.JPG | Child lying completely nude on rug in master bath of Cowan residence. Arms behind her, crossed around her chest. Legs are slightly spread open, exposing her genitals to the camera. |
| IMG_1529.JPG | Child lying completely nude on rug in master bedroom of Cowan residence. Legs are slightly spead open, exposing her genitals to the camera. Her hands behind her back and she is propping herself up. Smiling at the camera. |
| IMG_1531.JPG | Child lying completely nude on rug in master bedroom of Cowan residence. Her hands behind her back and she is propping herself up. Sticking tongue out at camera. Legs are slightly spread open, exposing her genitals to the camera. |

| IMG_1532.JPG | Child lying completely nude on rug in master bedroom of Cowan residence. Legs spread completely open, exposing genitals to camera. Her hands behind her back and she is propping herself up. Sticking tongue out at camera. |
|---|---|
| IMG_1533.JPG | Child lying completely nude on rug in master bedroom of Cowan residence. Legs spread completely open, exposing genitals to camera. Her hands behind her back and she is propping herself up. She is looking away from the camera. |

In addition to the photographs described above, the forensic investigation on the defendant's computers and media also produced other images and a number of videos. On all forms of digital equipment, the investigation revealed that there were a total of 340 images of child pornography, 22 of which, as described above, involved the defendant's daughter, and 33 videos. There were no inappropriate videos of the defendant nor the defendant's daughter singularly nor collectively. The following table constitutes representative examples of the images contained in those items:

| File Name (partial) | Type | Description |
|---|---|---|

11

| T-596258820-hot spermed little girl mix | video-clip (6:59) | A montage of men ejaculating into the mouths, faces, and on bodies of little children. Children are seen squirming in discomfort. One scene depicts child asleep as man ejaculates on her buttocks. |
|---|---|---|
| Preview-T-28901264-Kinderficker | video-clip (0:35) | Infant girl being brutally raped by adult male. Child cries out in pain. |
| T-61943812-PHTC JrH555(cum inside pedo pussy!!!) | Video-clip (5:55) | Prepubescent female from waist down. Vagina is rubbed digitally. Adult male has intercourse with child. |
| qqaazz pthc pedo - kyky (anal, crying) | Video-clip (2:20) | Infant held down while adult male brutally penetrates anally. Baby cries out in pain as adult male says "See? Good girl." |
| Qqaazz Butt Fuck with Dad Delights 4Yo 5yo Girl | Video-clip (0:18) | Prepubescent girl penetrated vaginally by adult male. Child is on knees and elbows are on a bed. |

| qqaazz pthc pedo 1yo girl about to be fucked | Image | Infant girl lying on back wearing only a shirt. Adult penis resting near pubic region of child. |
|---|---|---|
| qqaazz ptch pedo baby girl gets fingered and fucked | Image | Female toddler lying on back. Completely nude; male attempts to insert or rub erect penis on vaginal area. |
| Qqaazz Pthc Pedo Baby Getting Screwed | Image | Infant lying on her back; raped anally by adult male. |
| #(Pthc) 9Yo Jenny Blows Dad & Dog .mpg | Video (16:53) | Prepubescent female bound by arms & legs with rope. Leather band wrapped around neck. Performs fellatio on adult male, male rubs inside her vagina. Later blindfolded, continues fellatio. Feet now bound to metal pole with rope. |
| PEDO qqaazz#04 pthc maryanne | Image | Female toddler holding penis towards face. She appears to be completely nude. |
| Qqaazz Pthc Pedo 1Yo Girl About to Be Fucked | Image | Female toddler naked from waist down. Buttocks resting on adult penis. |

On August 18, 2009, state authorities arrested the defendant on related

charges. The defendant remained in state custody until federal authorities arrested

13

him on December 30, 2009. On the same date, the defendant made his initial

appearance before United States Magistrate Judge Monte C. Richardson, who

ordered the defendant detained. The defendant has remained in continuous custody

since his arrest by state authorities.

### Statement of the Facts

(Trial Testimony)

Carol Lynn Crumpton, a daycare worker with 20 years of day care

experience at Dunn's Creek Baptist Church Day Care, testified in the government's

case. Crumpton testified that on August 18, 2009, defendant Cowan dropped his

daughter off to daycare. (Doc. 89, 27). Ms. Crumpton testified August 18th was

the second day of school for the defendant's daughter, and that as soon as the child

entered the class room the child immediately made statements of concern. (Doc.

89, 28). Ms. Crumpton testified the child's statements gave her concern the child

was being sexually molested by her father. Ms. Crumpton testified the child had

been in her class for the preceding year and was "very bright." (Doc. 89, 26). Ms.

Crumpton testified this was the first incident in 20 years that a child's statement

gave her concern about sexual molestation. (Doc. 89, 28). Ms. Crumpton

immediately reported her concern to her boss, Joyce Owens. (Doc. 89, 29).

Detective Mechele Soehlig, a 10 year detective with 4 years in sex crimes

testified to going to the home of Christine Cowan. (Doc. 89, 50) Ms. Cowan

14

consented to the officers taking some items from the home. (Doc. 89, 52, 54)

(Exhibit 3). Detective Soehlig testified the child pointed out the computer that her

father, Mr. Cowan used. Detective Soehlig testified to pictures taken at the Cowan

home. (Exhibits #4, #5, #6, #7 and #8 photos of the home and photos of items

including the work station, backup memory sticks and computer)(Doc. 89, 58). In

addition to the items in the photos, they took items from the home including the

computer mouse, CDs that were on the desk, the memory sticks that were in plain

view on the desk. (Doc. 89, 59-60). See Exhibits 9 and 10.

On cross the detective could not remember if the Maxtor was connected to

the computer or the printer. (Doc. 89, 63).

Larry Samuel Baker, an 11 year JSO Detective, having a prior work history

as a Saint Augustine Officer and US Navy in-flight paramedic, (Doc. 89, 79)

responded to a call from CPI Vaughn. Detective Baker and Detective Devevo

went to Dunn's Creek Day Care. Upon arrival, Detective Baker interviewed Carol

Crumpton and Joyce Owens. Detective Baker directed Detective Soehlig to

secure equipment from the Cowans' home (Doc. 89, 86). Detective Baker

testified the reason he wanted to secure equipment from the Cowans' home

because the child stated she had made a movie with her dad. (Doc. 89, 84). See

Exhibit 11.

Detective Baker testified that Cowan brought his laptop, an Apple G4

PowerBook, and his personal Apple iPhone to the interview. Baker testified that

15

Cowan was a middle school counselor at Fort Caroline Middle School in Duval County, Florida. (Doc. 89, 87). Cowan told Detective Baker that the child was "incredibly intelligent and read on a second grade level" that she loved "educational games and to play on the computer." (Doc. 89, 92). The defendant stated Ms. Cowan was at work on August 14, 2009. During the interview the defendant said "as long as nobody else has touched [his daughter] then [he felt] good because [he] hasn't done anything inappropriate." (Doc. 89, 93).

Detective Baker testified that Cowan stated the child heard him refer to her vagina as a "twat" and they let her keep saying it as a joke. (Doc. 89, 94).

Detective Baker testified that Cowan said he showed the child a video on the computer which he referred to as a "Chicago video" or "something someone had posted on Facebook." (Doc. 89, 95). Detective Baker testified that Cowan said "he did not have porn"; then he said "he did not do porn." (Doc. 89, 95). Detective Baker arrested Cowan. (Doc. 89, 96). Detective Baker then sought out the assistance of a computer forensic examiner named Special Agent Greenmun. (Exhibit #9-17-inch Apple Computer from the home, Doc. 89, 96)(Exhibit #10-Maxtor External Hard Drive). School Board Detective, John McCallum, assisted with obtaining items from the school. (Exhibit #12-Toshiba external drive)(Doc. 89, 97).

Detective Baker received the 24 inch computer from Ms. Cowan on August 20, 2009. (Exhibit #11-24inch computer)(Doc. 89, 99). Detective Baker obtained a

16

search warrant for the defendant's storage shed (Doc. 89, 101) (Exhibits #13, #14 and #15 depict items from the storage shed including a green canvas bag, numerous art books, a book titled "Show Me", and a collage of magazines)(Doc. 89, 102-104).

On cross, Detective Baker stated he did not find a video of Cowan and his daughter. (Doc. 89, 105). (emphasis supplied) Detective Baker testified that the child's statement about making a movie with her dad was never substantiated (Doc. 89, 105). Detective Baker stated he did not believe the child made a mistake about the video. (Doc. 89, 106). On cross, Detective Baker stated that the Show Me  book was a best seller that could be obtained at any book store similar to Barnes & Noble. On redirect, Detective Baker stated the types of magazines, however could not be obtained at Barnes & Noble. (Doc. 89, 107). On recross, Detective Brown stated the books found in the storage unit were not illegal, nor contraband. (Doc. 89, 107).

Marquis D. Pickett, Secret Service, former U.S. Air Force, testified that he assisted with extracting images from the Apple iPhone. (Exhibit #16). Pickett testified that some of the images were deleted from the iPhone and he could not determine what the images were. (Doc. 89, 112). However, Special Agent Greenmun did determine what the deleted images were. (Doc. 89, 116).

17

Derrick Donnelly, CTO of Blackbag technologies, computer forensics specialist, prior Apple IT Security manager/ prior federal law enforcement officer in Canada, testified that he completed a forensic analysis of the hard disk drive duplicate of the iPhone(Exhibit #1A (Doc. 89, 124).

James Edward Culbert, Duval County Public Schools information security manager with 12 years of forensics training, testified that he analyzed the defendant's school computer, the school system and other computer media including the desktop computers from Arlington Middle School and Fort Caroline Middle School. (Doc. 89, 129). Culbert conducted a forensic analysis of the two computers. Neither computer yielded any evidence of child pornography (Doc. 89, 129 line #25). [emphasis supplied] Culbert gave the External hard drive (Exhibit 12) to John McCallum, Duval County Public School In House Investigator and Detective Larry Baker. On Cross, Culbert testified they secured the hard drive as part of due diligence even though it was not a school board issued device. (Doc. 89, 131).

Special Agent James Greenmun, Special Agent Homeland Security/ Immigration and Customs Enforcement, was submitted as an expert in forensic technology (Doc. 89, 168). Greenmun testified to his forensic analysis of Cowan's computers.

18

Agent Greenmun located approximately 300 files that had been deleted and were located in "unallocated spaces." There files had names that indicated that they might have been child pornography, but Greenmun could not verify their contents as they were deleted past the point of recovery (Doc. 89, 178).

Greenmun testified that smart phones allow one to tell the date and time the picture was taken as well as the GPS for the location where a picture was taken (Doc. 89, 213). The photographs in exhibit 17 through 35 were taken with Mr. Cowan's Apple iPhone (89, 189). Exhibit #17 was taken around lunchtime on August 14, 2009 at the beach, but was not a pornographic picture. Exhibits 18-24 (Img. 1495, 1496, 1499, 1500, 1502, 1503, 1505) constitute count four and are photographs taken in Cowan's Honda Accord when they were travelling on Alta Drive and Yellow Bluff Road. Exhibits 25-34 (Img. 1516, 1520, 1521, 1522, 1524, 1526, 1529, 1531, 1532, 1533) constitute count five and are photographs at the Cowan residence at 15123 Reef Drive South, Jacksonville, Florida. There 17 photographs were part of a set of 37 photographs that Mr. Cowan took of his daughter that day (Doc. 89, 175). They were located on the Toshiba hard-drive. (Doc. 89-182).

Special Agent Greenmun characterized each of the 7 photographs in count four as "camera focused on her stomach area; wearing an open robe exposing her

19

genital area-genital region visible as a focus of the camera." The defense questions
how the focus could be on the stomach area and on the genital region at the same
time, especially as the genital area is barely visible.

The photographs in count five were taken in the hallway, and master
bedroom of the Cowan residence. The child's genital was visible in some, but not
all, of the photographs. The defense maintained that these photographs were
merely photographs taken by a parent of his child being cute and playing and
dancing around-they were not in any way intended to be lustful in nature. The
photographs do not constitute "using a minor engaged in sexual explicit conduct
for the purpose of producing child pornography" as described by 18 U.S.C. §
2251(A).

In any event, agent Greenmun ultimately testified, without any qualification
nor condition, that the photographs depicted in counts 4 and 5 are pornographic.
(Doc. 89, 176). [emphasis supplied]

Exhibit #35 was not charged. It shows the child in the car seat with her legs
crossed; genitals are not exposed but the robe is open. Exhibit #36-39 are digital
photographs taken by Agent Greenmun. Exhibit #36 is a picture of the child's car
seat secured in the back of Cowan's black Honda. Exhibit #37 is the Cowan
Master bedroom. Exhibit #38 is the hallway of the Cowan residence. Exhibit #39

20

is a picture of the headboard in the Cowan Master bedroom (Doc. 89, 209).

Exhibits #41, #42, and #43 are the GPS pinpoint coordinates showing where the

pictures were taken (Doc. 89, 211). Exhibit #40 is a chart created by Agent

Greenmun that shows where each picture was taken. Greenmun testified that the

GPS coordinates are not 100% accurate as locations come from phone towers in

the area and not satellites (Doc. 89, 213).

Exhibit #44 shows a page with a list of words, some of which are known

child pornography search terms, some are known pornography (not necessarily

child) search terms, and some were terms with which Agent Greenmun was

unfamiliar. The defense has stated this was a list Mr. Cowan created when he was

trying to figure out how unwanted, unrequested pornographic files were arriving

on his computer. This list helped him to avoid downloading files or to stop files

that were in the process of downloading. This list was located on the Apple G4

Laptop.

Exhibit #45 represents the charge in count one of the Indictment. It is a

video titled "kindertucker PTHC PTSC Hussyfan– Reygood kingpass QQAAZZ I.

Exhibit #46 is a video file titled "Preview-T28901264- Kinderficker Pthc Ptsc

Hussyfan R@ygold Kingpass Qqaazz I Fuck My 1.mpg" recovered from Apple

iMac (24 in.) computer.  "Both of these files were located on the 24 I-Mac in a

folder labeled "incomplete". The defense maintained at trial that these files being located in the "incomplete" folder is evidence that Mr. Cowan not only did not knowingly receive, but knowingly stopped the receipt of these files. Limewire downloads files into the incomplete folder and then transfers them out when they finish downloading. By virtue of these files being in the "incomplete" folder, it shows that their downloading was stopped.

Exhibit #47 is a video titled "...PTHC cum inside Pedo Protein Fuck..."-this is embodied in count three of the Indictment and was located on the 17" I-mac. Exhibits 53-55 are shown in count seven of the Indictment. Exhibit #53 is a video and Exhibits #54 and #55 are images. The defense maintained at trial that there is no evidence that Mr. Cowan was aware that these files had been downloaded to his computer. Mr. Cowan downloads music from Limewire and these files automatically load into itunes. Cowan will also search for legitimate video and image files and on occasion unrequested files also arrived. Mr. Cowan deleted these files promptly when he found them.

Exhibits 48-52 are a part of the charges in count six of the Indictment. Exhibit #48 and #49 are videos while #50, #51, and #52 are images. These files, along with some others, were found on the Maxtor Hard-drive which has been identified as the back up drive for the Apple G4 laptop computer. The defense maintained at trial that the existence of these files on a back up drive does not

constitute "knowing receipt" as the computer backs up files automatically using the program "time machine". The fact that these files were not found on the laptop computer means they were deleted when they were found; they were not collected nor retained.

On cross examination, Agent Greenmun was not sure that typing a common term like "Torpedo" would not also bring up the same pornographic files the search term "pedo" would bring up (Doc. 89, 240, 246). He also admitted that a person could, in searching the internet, effectuate a mass download without actually looking at the files (Doc. 89, 245, 247).

After the adverse jury verdict the court requested that a PSR be prepared for sentencing. (Doc. 74).

The PSR stated (in relevant portions):

Adjustment for Obstruction

The defendant took the witness stand at his trial and answered several questions regarding the downloading of child pornography on his computers. The defendant denied knowingly downloading images of child pornography and told the jury that child pornography appeared on his computer accidently, and that he did not knowingly download such images on his computers. Given the specificity of the defendant's testimony and its variance with the jury's findings of fact, the defendant testified falsely, and thus willfully obstructed or attempted to obstruct or impede the administration of justice with respect to the prosecution on the instant offense.

Adjustment for Acceptance of Responsibility

The defendant entered a not guilty plea, proceeded to trial, and was convicted. The probation office has no information indicating that a

reduction for acceptance of responsibility is warranted. USSG § 3E1.1.

Offense Level Computation

The probation office has used the guidelines manual in effect November 1, 2010, in determining the advisory guideline range. In determining the ultimate sentence to be imposed, the Court will consider the advisory guidelines and take into account the factors listed in Title 18, United States Code, Section 3553(a).

Grouping of Multiple Counts: When a defendant is convicted of more than one count, reference is made to the grouping procedure outlined in USSG §§ 3D1.1 - 3D1.5, to determine the offense level. The defendant has been convicted of three counts of receiving child pornography, which are governed by USSG §2G2.2, two counts of production of child pornography, which are governed by USSG §2G2.1, and two counts of possession of child pornography, which are governed by USSG §2G2.2. According to §3D1.2, all counts involving substantially the same harm are to be grouped together into a single group, except for offenses specifically excluded from grouping, in which case, each count shall constitute a single group, and a combined offense level is determined according to §3D1.4.

**(Group One - Possessing and Receiving Child Pornography: Counts One through Three, Six, and Seven)**

Base Offense Level: The guideline for a violation of 18 U.S.C. § 2252(a)(2) is found at USSG §2G2.2(a)(2). That guideline provides for a base offense level of 22, if the defendant was not convicted of statutes listed at (a)(1). Although the defendant was convicted of Counts Six and Seven pursuant to 18 U.S.C. § 2252(a)(4)(B), which is contained in the list at (a)(1), he was also convicted of three other counts not listed, which would constitute being "otherwise" convicted. Therefore, the base offense level is                **22**

Specific Offense Characteristics: According to USSG §2G2.2(b)(2), if the material involved a prepubescent minor or a minor who had not attained the age of 12, increase by 2 levels.                2

Specific Offense Characteristics: According to §2G2.2(b)(4), if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels. Since the material contained depictions of adults having sexual intercourse with prepubescent children, those acts are presumed to have been

24

painful to the children involved, and are deemed as portraying sadistic or masochistic conduct, or other depictions of violence.[2] Therefore, 4 levels are added.                    4

Specific Offense Characteristics: According to §2G2.2(b)(5), if the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels. Since the defendant engaged in conduct constituting the sexual battery of a four year old minor, 5 levels are added.[3]                    5

Specific Offense Characteristics: According to §2G2.2(b)(6), if the offense involved the use of a computer or interactive computer service for the possession, transmission, receipt, or distribution of the material, increase by 2 levels. Since the defendant possessed the material by way of a computer, 2 levels are added.                    2

Specific Offense Characteristics: According to §2G2.2(b)(7)(D), if the offense involved 600 or more images, increase by 5 levels. Since the offense involved approximately 2,815 images, 5 levels are added.[4]
                                                                5

Victim Related Adjustment: None                    0
Adjustment for Role in the Offense: None                    0
Adjustment for Obstruction of Justice: According to §3C1.3, if the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the (i) the defendant's offense of conviction and any relevant conduct, or (ii) a closely related offense, increase by 2 levels. Since the defendant provided false testimony at trial, he willfully obstructed or attempted to obstruct the

---

[2]The current position of the Eleventh Circuit is that adult penetration of prepubescent children is presumptively painful, and thus constitutes sadistic conduct within the meaning of USSG §2G2.2(b)(4). (See *U.S. vs. Hall*, 312 F.3d 1250) [footnote in original]

[3]A pattern of activity involving the sexual abuse or exploitation of a minor means any combination of two or more separate instances whether or not the abuse or exploitation event (A) occurred during the course of the offense; (b) involved the same minor; or (3) resulted in a conviction for such conduct. USSG §2G2.2, comment. (n.1). [footnote in original]

[4]Each pornographic item (340) is considered to be one image. Each video-clip (33) etc., is considered to have 75 images (33x 75) = 2,475). Therefore, the total images is (340 + 2,475) is 2,815. USSG §2G2.2, comment. (n.4). [footnote in original]

administration of justice with respect to the prosecution of the instant offense as contemplated by the Guidelines. Therefore, 2 levels are added.                                                                             2

Adjusted Offense Level: (Subtotal)                              42

**(Group Two- Production of Child Pornography: Count Four)**

Base Offense Level: The guideline for a violation of 18 U.S.C. § 2251(a) is found at USSG §2G2.1 . That guideline provides for a base offense level of 32.                                                              32

Specific Offense Characteristics: According to §2G2.1(b)(1), if the offense involved a minor who had not attained the age of 12 years, increase by 4 levels. Since the offense involved a minor of age four, a 4 level increase is warranted.                                              4

Specific Offense Characteristics: According to §2G2.1(b)(2)(A), if the offense involved the commission of a sexual act or sexual contact, increase by 2 levels. Since the offense did involve sexual acts and contact with a four year old minor, a 2 level increase is warranted. 2

Specific Offense Characteristics: According to §2G2.1(b)(5), if the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels. The defendant was the natural father of the minor and otherwise exercised those contingencies with respect to the minor. Therefore, 2 levels are added.                                                                2

Victim Related Adjustment: None                                 0

Adjustment for Role in the Offense: None                        0

Adjustment for Obstruction of Justice: According to §3C1.3, if the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the (i) the defendant's offense of conviction and any relevant conduct, or (ii) a closely related offense, increase by 2 levels. Since the defendant provided false testimony at trial, he willfully obstructed or attempted to obstruct the administration of justice with respect to the prosecution of the instant offense as contemplated by the Guidelines. Therefore, 2 levels are added.                           Referral                  2

Adjusted Offense Level: (Subtotal)                              42

**(Group Three - Production of Child Pornography: Count Five)**

Base Offense Level: The guideline for a violation of 18 U.S.C. § 2251(a) is found at USSG §2G2.1 . That guideline provides for a base offense level of 32.                                                             32

Specific Offense Characteristics: According to §2G2.1 (b)(1), if the offense involved a minor who had not attained the age of 12 years, increase by 4 levels. Since the offense involved a minor of age four, a 4 level increase is warranted.                                                  4

Specific Offense Characteristics: According to §2G2.1(b)(2)(A), if the offense involved the commission of a sexual act or sexual contact, increase by 2 levels. Since the offense did involve sexual acts and contact with a four year old minor, a 2 level increase is warranted.2

Specific Offense Characteristics: According to §2G2.2(b)(5), if the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels. The defendant was the natural father of the minor and otherwise exercised those contingencies with respect to the minor. Therefore, 2 levels are added.                                                          2

Victim Related Adjustment: None                                   0

Adjustment for Obstruction of Justice: According to §3C1.3, if the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the (i) the defendant's offense of conviction and any relevant conduct, or (ii) a closely related offense, increase by 2 levels. Since the defendant provided false testimony at trial, he willfully obstructed or attempted to obstruct the administration of justice with respect to the prosecution of the instant offense as contemplated by the Guidelines. Therefore, 2 levels are added.                                                             <u>2</u>

Adjusted Offense Level:  (Subtotal)                                42

Multiple Count Adjustment (See USSG §3D1.4)

Group One/Counts 1 - 3, 6 and 7                          <u>Units</u>

Adjusted Offense Level   42                .              1


Group Two/Count 4

Adjusted Offense Level ................................42     1

27

Group Three/Count 5
Adjusted .........................................................42    1

Total Number of Units.......................................    3

Greatest of the Adjusted Offense
Levels Above.......................................42

Increase in Offense Level (USSG §3D1.4)......3

Combined Adjusted Offense Level:                **45**

Adjustment for Acceptance of Responsibility: The defendant has not
demonstrated a recognition and affirmative acceptance of
responsibility for his offense. USSG §3E1.1.
Total Offense Level                             45
Chapter Four Enhancements: None
PART B. THE DEFENDANTS CRIMINAL
HISTORY
Criminal records checks conducted with local, state, and federal law
enforcement agencies revealed no criminal convictions.
Criminal History Computation
The total of the criminal history points is 0. According to the
sentencing table (Chapter 5, Part A), 0 to 1 criminal history point
establishes a criminal history category of I.
Criminal History Enhancements
None

**(iii)    Standard of Review**

This court of appeals reviews de novo the interpretation of criminal statutes

and sentencing guidelines. <u>*United States v. Krawczak*</u>, 331 F.3d 1302, 1305 (11th

Cir. 2003).

28

This circuit reviews district court's decision regarding the admissibility of expert testimony and the reliability of an expert opinion for abuse of discretion. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).

This court review for clear error a district court's factual findings and review de novo the district court's application of law to those facts. See *United States v. Cover*, 199 F.3d 1270, 1274 (11th Cir. 2000). Whether there was sufficient evidence to support a conviction is a question of law subject to a de novo review. See *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990). This court restated the standard of review for sufficiency of the evidence in *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam):

> This Court must view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942) and determine whether the jury could have found defendant guilty beyond a reasonable doubt. See *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987). The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial. See *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd on other grounds, 462 U.S. 356, 103 S. Ct. 2398, 76 L. Ed. 2d 638 (1983).

"In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it..." *United States v. Pintado*, 715 F.2d 1501, 1503 (11th Cir. 1983) (per curiam) (quoting *United States v. Davis*, 666

F.2d 195, 201 (5th Cir. Unit B 1982). However, "[a] conviction must be reversed, 'if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt.'" *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983) (quoting *United States v. Marx*, 635 F.2d 436, 438 (5th Cir. Unit B Jan. 1981)).[5]

Courts review a criminal sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 261, 125 S. Ct. 738, 765-66 (2005). In so doing, courts employ an abuse-of-discretion standard and follow the two-step process outlined by the Supreme Court in carrying out that review. *Gall v. United States*, 552 U.S. 38, 49,128 S. Ct. 586, 597 (2007). First, the court must ensure the district court committed no significant procedural error, such as failing to calculate the guidelines range, treating the guidelines as mandatory rather than advisory, failing to consider the appropriate statutory factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. *Id*.

"Assuming that the district court's sentencing decision is procedurally sound," the reviewing court "then consider the substantive reasonableness of the sentence imposed." Id. In determining whether a sentence is substantively reasonable, courts must "take into account the totality of the circumstances, including the extent of any variance from guidelines range." *Id*. *United States v.*

---

[5] The Eleventh Circuit in **Bonner v. City of Prichard**, 661 F. 2d 1206, 1207 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). Although courts do not presume a sentence within the guidelines reasonable, the Eleventh circuit has held that the use of the guidelines remains central to the sentencing process. *United States v. Campbell*, 491 F.3d 1306, 1313, 1315 (11th Cir. 2007); *United States v. Talley*, 431 F.3d 784, 787 (11th Cir. 2005) (per curiam). The party challenging the sentence has the burden of establishing that the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. *Talley*, 431 F.3d at 788.

## SUMMARY OF THE ARGUMENT(S)

_____At trial, the defense argued that the government failed to prove "knowing and willful" use of the minor to create sexually explicit visual depictions of sexually explicit conduct. The defense also argued that the depictions were not purposed to incite lust; the pictures were of the child running around the room getting ready for a shower after the beach. The defense questioned how the government could argue that some pictures in the same series were used to incite lust while others were not. The defense maintained that there was no intention to distribute the pictures via interstate commerce nor the purpose was not to distribute the pictures interstate commerce because Cowan took the pictures and put them on a computer hard drive. The defense argued that Cowan did not know the depictions were there because he always deleted the child pornography when it

came up in his online searches. Additionally, there were over 17,000 proper

photos of the child. The defense argued the government never produced a video of

the child and Cowan, much less an improper nor illegal one.

The court committed reversible error when it denied defendant's Motion for

a directed verdict of acquittal; the jury instructions were inadequate on the pivotal

issue of mens rea/scienter and the evidence lacking.

The impropriety of the primary principal witness is glaring and inexcusable.

Special agent Greenmun's testimony is irreconcilable, incredible and incapable of

supporting a finding of "knowingly" beyond a reasonable doubt, much less that

the government's exhibits were indicative of pornography, thereby invading the

jury's province.

A reasonable jury must necessarily entertain a reasonable doubt as to

Cowan's guilt. There was no credible evidence of knowingly and willful

possession of the alleged pornographic materials in question. Similarly, the

testimony of the relevant government witnesses was incredulous, and unworthy of

belief.

The United States Supreme Court's decisions in *United States v. Booker*,

543 U.S. 220 (2005), and *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456

(2007), represent important milestones. Together, Booker and Rita establish

certain bedrock principles. The first is that, under the unitary standard of appellate review established in <u>Booker</u>, ___**no**___ presumption in favor of a Guidelines sentence binds the district court. (e.s.) Although the properly calculated guideline range is a factor to be considered in all cases, it is not a tether, anchor, nor baseline. The second principle which follows from the first, is that regardless of whether the sentence is inside or outside the guideline range, that sentence is entitled to substantial deference on appellate review. Accordingly, the district court is the primary actor in the sentencing process and retains considerable discretion, subject to the requirements of 18 U.S.C. § 3553(a), in selecting an appropriate sentence.

The obligation of a district judge is to impose an individualized sentence that "consider[s]" the various factors set for in 18 U.S.C. § 3553(a), given those factors the weight the judge thinks appropriate in the circumstances, subject to the overarching requirement of parsimony. This consideration requirement reflects the overriding importance of two indispensable elements of just sentencing: reasoned judgment and individualized.

The district court failed to comply with the requirement of 18 U.S.C. § 3553(c)(2) that reasons for "an upward variance" "be stated with specificity in the written order of judgment and commitment." The court's choice of running the sentences consecutively, thereby leading to essentially a lifetime prison sentence

in reality constitutes an upward variance from the statutory maximums for each

individual count. The remedy is a remand for a new sentencing hearing.

## ARGUMENT(S)

### I.    THE ALLEGED EXPERT TESTIMONY WAS IMPROVIDENT AND IMPROPER.

In _Daubert v. Merrell_, 509 U.S. 579 (1993), the United States Supreme

Court generally discussed the district court's role as a gatekeeper in determining

whether expert testimony on scientific matters is admissible under Fed, R, Evid.

702. The Daubert Court also set out a list of "general observations" for

determining whether expert testimony is sufficiently reliable to be admitted under

Rule 702, including (1) whether it can and has been tested; (2) whether it has been

subjected to peer review and publication; (3) what its known or potential rate of

error is, and whether standards controlling its operation exist; and (4) whether it is

generally accepted in the field. See, _Daubert_, supra at 589.

Agent Greenmun testified as follows (in part):

> ...the following paragraph, the images of child pornography consisted
> of images that focused on the genital region of Cowan's daughter,
> were images in which there was a lewd display of her genital region,
> are included in the following images.
> There was also images which showed her in provocative positions in
> the bed in the master bedroom and a striptease within the hallway of
> the residence. Within the total of 37 images in the series, 2 of them
> constitute child pornography. (Doc. 89, 176) [emphasis supplied]

34

The above testimony has very little to do with assisting the jury with non-lay person testimony matters; it is a back-door attempt to introduce salacious and prejudicial information at trial, and also the invade the jury fact finding duties. The district court should not have allowed such testimony. The admission of this testimony was in error and extremely prejudicial to Cowan.

## II.    THE TRIAL EVIDENCE WAS EQUIVOCAL, INCREDIBLE AND UNWORTHY OR BELIEF.

At trial, the district judge merely instructed the jury as follows:

> ... The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.
> The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that his conduct may be violating... (in relevant portions)[6].  (Doc. 71, 18)

Defendant consistently denied culpability nor knowingly receipt of minor pornographic material. The error is not harmless.

In _United States v. Pruitt_, 638 F.3d 763(11th Cir. 2011), the court held:

---

[6] This portion of the jury charge was woefully inadequate in a case like this, warranting a more definitive charge on, scienter and "knowingly". See, e.g., _United States v. Gaudin_, 515 U.S. 506, 132 L. Ed. 2d 444, 115 S. Ct. 2310 (1995) (holding that the materiality of a false statement is a matter for the jury to decide). Jury instructions are reviewed "in the context of the entire trial to determine if they were misleading or inadequate to guide the Jury's deliberations."

The ordinary meaning of "receive" is "to knowingly accept"; "to take possession or delivery of"; or "to take in through the mind or senses." Webster's Third New International Dictionary: Unabridged 1894 (1993); see also 13 Oxford English Dictionary 314 (2d ed. 1989). A person "knowingly receives" child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, or accepts child pornography on a computer from an outside source.[7]

Under this statutes's "knowingly receives" element, an intentional viewer of child-pornography images sent to his computer may be convicted whether or not, for example, he acts to save the images to a hard drive, to edit them, or otherwise to exert more control over them. Cf. _United States v. Romm_, 455 F.3d 990, 998 (9th Cir. 2006) (finding sufficient for "receiv[ing]" under Section 2252A that "Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them") Evidence that a person has sought – searched for – child pornography on the internet and has a computer containing child-pornography images – whether in the hard drive, cache, or unallocated spaces – can count as circumstantial evidence that a person has "knowingly receive[d]" child pornography.

Inadvertent receipt of child pornography is not a violation of the statute. We stress that Section 2252A(a)(2) criminalizes only "knowing[]" receipt. This element of scienter carries critical importance in the internet context given spam and the prevalence and sophistication of some computer viruses and hackers that can prey upon innocent computer users. For background, see Note, Child Pornography, the Internet, and the Challenge of Updating Statutory Terms, 122 Harv. L. Rev. 2206, 2211-14 (2009) (describing ways a person could unintentionally receive child pornography).

Under the statute, courts will address "knowing[] recei[pt]" mainly as issues of fact, not of law; and the specter of spam, viruses, and

---

[7] This textually based interpretation of the "recei[pt]" statute is consistent with statements we made in an earlier case, United States v. Bobb, dealing with this same statute, 577 F.3d 1366 (11th Cir. 2009). In Bobb, we concluded that congress did not intend to impose multiple punishments for child pornography "possess[ion]" and 'recei[pt]' under Section 2252A. Id. at 1373-74. In coming to this conclusion, the Bobb Court noted, "[g]enerally federal statutes criminalizing the receipt of contraband...require a knowing acceptance or taking of possession of the prohibited item." See id. at 1372 (citing cases). [footnote in original]

hackers must not prevent the conviction of the truly guilty. But prosecutors, judges, and juries have a duty to safeguard -- as best as they are able -- potential defendants when receipt of child pornography might well have been truly inadvertent. Given the stigma associated with even being accused of this kind of crime, the incentives as well as the opportunities for smears are readily present. .. Id.

In order for the evidence to support a conviction under 18 U.S.C. § 2252A(a)(2)(A), it must be sufficient to establish that the defendant knew that the material he was receiving into his possession constituted child pornography, <u>with the specific intent to exercise dominion and control over such material, **_and_** that the defendant must knowingly possess the child pornography upon its receipt</u>. (emphasis supplied)  However, the evidence in this case does not establish that Cowan sought out images of child pornography with the specific intent to possess them, nor does indicia of control show that Cowan knowingly received any of the images on either the computer(s) in question. In addition, the evidence does not establish that Cowan knowingly possessed the child pornography on either computer(s) after its receipt. The evidence is, therefore, not sufficient to sustain the conviction against Cowan as to all applicable counts.

The essential elements comprising the offense of "knowingly receiving" child pornography as proscribed by § 2252A(a)(2)(A) require sufficient evidence showing as follows: (1) the defendant must know that the material he is receiving

37

into his possession constitutes child pornography and he must have the specific intent to exercise dominion and control over such material: and (2) the defendant must knowingly possess the child pornography upon its receipt. There should exist a greater quantum of evidence beyond that which is deemed sufficient to show possession, and the scope of the inquiry is limited to the events leading up to possession.

In order to support the conviction, then, the evidence adduced at trial must be sufficient to demonstrate Cowan's guilt beyond a reasonable doubt as to each element. The trial evidence failed to do so and Cowan's convictions must be overturned.

The totality of the evidence fails to establish that Cowan knowingly received child pornography on any of computers. Consequently, it is insufficient to prove beyond a reasonable doubt that Cowan received child pornography in violation of § 2252(a)(2) nor possessed it in violation of § 2252(a)(4)(B).

**III. COWAN'S 1680 MONTHS SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE SINCE THE DISTRICT COURT FAILED TO PROPERLY APPLY THE SENTENCING GUIDELINES, TO EXERCISE INDIVIDUALIZED DISCRETION AND TO PROPERLY CONSIDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a)**

**A.    The District Court Imposed A Procedurally Unreasonable Sentence.**

When imposing sentence, a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Gall, 552 U.S. at 50. Section 3553 (c) requires that, "at the time of sentencing," the sentencing judge "shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence... is outside the range...the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2).

A sentence is procedurally unreasonable if the district court improperly calculates the Guidelines imprisonment range, treats the Guidelines as mandatory, fails to consider the appropriate statutory factors, bases the sentence on clearly erroneous facts, or fails to adequately explain its reasoning. Gall, 552 U.S. at 51. In failing to consider the appropriate statutory factors and failing to adequately and detailingly explain its reasoning in imposing sentence on Mr. Cowan, the district court imposed a procedurally unreasonable sentence.

**a. Base Offense Level Computation is in Error.**

Paragraph 29 of the PSI computed the Base Offense Level pursuant to USSG §2G2.2(a)(2) in error. The defendant objected to the application of base offense level 22, arguing that because Counts Six and Seven are governed by 18 U.S.C. § 2252(a)(4), the base offense level should be 18 as specified at §2G2.2(a)(1), instead of §2G2.2(a)(2).

The probation office's reliance on U.S.S.G. § 1B1.1, App. Note 5 is misplaced. That paragraph relates to <u>guideline provision</u>(s) not the different sections nor sub-sections in a particular guideline provision. (emphasis supplied). There is no competing nor conflicting guideline provisions in this case. See <u>U.S. v. Anderson</u>, 326 F.3d 1319, 1331 (11th Cir. 2003).

Similarly, U.S.S.G. § 1B1.1(a)(2), specifically and unequivocally provides that the base offense level should be utilized in the order listed. The said provision instructs district courts to determine base offense level... "contained in the particular guideline..." in the order listed; U.S.S.G. § 2G2.2 [listing base offense level 18 first – § 2G2.2(a)(1)]. The latter expressly refers to a § 2252(a)(4) conviction. Hence, the district court is obligated to impose the first base offense level since an offense of conviction (in the groupable offenses) is expressly stated therein.

40

To the extent the applicable counts are grouped (pursuant to U.S.S.G. § 3D1.2(d) effective November 1, 2001), the guideline provision U.S.S.G. 2G2.2 expressly referencing a § 2252 (a)(4) conviction controls to warrant application of § (a)(1) therein. Hence, the probation office's use of the other sub-section (a)(2) is ill-advised.

**b. Sadistic Related Enhancement is Improper.**

Paragraph 31 of the PSI relates to Material Portraying Sadistic or Masochistic Conduct or Other Depictions of Violence pursuant to USSG §2G2.2(b)(4). The defendant objected to the increase for this specific offense characteristic, arguing that there was no intent shown in the facts of the case, that the probation office applied a "strict liability requirement"; and, that possession of an image that portrays sadistic conduct is not relevant conduct to receiving child pornography. In support of his arguments, the defendant relied on *United States v. Tucker*, 136 F.3d 763 (11th Cir. 1998), *United States v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995), and *United States v. Dunlap*, 279 F.3d 965 (11th Cir. 2002). In *U.S. v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995) (upholding the trial court's finding that defendant "intentionally" ordered and possessed portrayals of sadistic or masochistic content); and *U.S. v. Tucker*, 136 F. 3d 763 (11th Cir. 1998) (finding intent to possess sadistic child pornography based on pictures of minors in

bondage located on the hard drive of defendant's computer). In <u>Tucker</u>, the

Eleventh Circuit Court maintains that the enhancement herein requires a <u>showing</u>

<u>of intent</u>. <u>Id</u>. at 764. (emphasis supplied) Admittedly, subsection (b)(4) does not

itself expressly contain any mens rea requirement, and contrary to the 11th Circuit,

the Seventh and Eighth Circuits have held that there is "strict liability" for

receiving violent child pornography and thus the enhancement applies regardless

of whether defendant intended to receive such materials. In <u>Tucker</u>, however the

court held:

> Although this court has not specifically addressed enhancement under
> U.S.S.G. § 2G2.2(b)(3), it has held that an enhancement under
> U.S.S.G. § 2G2.2(b)(1) for possession of material involving a minor
> who is prepubescent or under the age of 12 requires the government
> to show that the defendant intended to receive such material. <u>United
> States v. Cole</u>, 61 F.3d 24, 24 (11th Cir.1995) (quoting <u>United States
> v. Saylor,</u> 959 F.2d 198, 200 (11th Cir.1992))).
> The Fifth Circuit has found that enhancement under § 2G2.2(b)(3)
> has an intent requirement. In <u>United States v. Kimbrough</u>, 69 F.3d
> 723, 734 (5th Cir.1995), cert. denied, 517 U.S. 1157, 116 S. Ct. 1547,
> 134 L. Ed. 2d 650 (1996), the court found that pictures of a minor
> female in bondage downloaded onto the defendant's computer were
> sufficient evidence to conclude that the defendant had intentionally
> ordered and possessed pornography that depicted sadistic or
> masochistic conduct. In <u>United States v. Canada</u>, 110 F.3d 260,264
> (5th Cir.), cert. denied, U.S. , 118 S. Ct. 195, 139 L. Ed. 2d 133
> (1997), the court found an enhancement under § 2G2.2(b)(1) was
> supported by evidence of sadistic material and active trading in child
> pornography was found on the hard drive of the defendant's
> computer.
> We adopt the reasoning of the Fifth Circuit and find that intent is a
> necessary requirement of a § 2G2.2(b)(1) enhancement, and find that

there was sufficient evidence that Tucker intended to possess material depicting minors involved in sadistic, masochistic, or other violent acts. Tucker concedes that pictures of minors in bondage were located on the hard drive of his computer. The government introduced Internet conversations taken from Tucker's computer which showed that while he was looking for pictures he stated that he was into "young action" and would "like to start trading (3)27" and introduced a listing of Internet conversations documenting Tucker's trading of such images.

We conclude that the district court properly assessed Tucker a four-level enhancement for intending to possess material depicting minors involved in sadistic, masochistic, or other violent acts. Tucker, at 763-4.

The Tucker reasoning and rationale, but not its conclusion, apply with equal force to this case.

## C. Pattern of Activity not Established.

Paragraph 32 of the PSI dealt with an enhancement relating to a Pattern of Activity Involving Sexual Abuse or Exploitation of a Minor pursuant to USSG §2G2.2(b)(5). The defendant objected to the application of the 5-level increase, arguing that the offense only involves possession, and specifically excludes viewing, receipt, or trafficking. The defendant also contends that even if the offense is construed to have involved sexual abuse or exploitation, there would be only one such occurrence, falling short of the two required under the guideline.

This provision requires implicitly a commission of a physical sexual contact. The defendant's picture taking of his child would not qualify under the

43

guidelines, as otherwise charged under Counts 4 and 5. Similarly, the videos or clips of unrelated individuals garnered from the internet is specifically not covered under this section. See U.S.S.G. § 2G2.2, Commentary (note 1) [definitions].

Defendant specifically objected to the inclusion of uncharged (federally) unproven and untested conduct as contained in the Information filed by the State of Florida. The government is obligated, but failed, to present reliable and credible evidence at sentencing upon which the court must make explicit findings of fact as to credibility, and defendant has not had a fair and proper opportunity to rebut the evidence.

**D. Computation of Numerical Amount of Images is in Error.**

Paragraph 34 of the PSI purports to compute the Number of Images involved pursuant to USSG §2G2.2(b)(7)(D). The defendant objected to the inclusion of video-clips in the determination of the number of images, arguing that video-clip is "loosely defined" and that images in temporary internet files of unsophisticated users should not be used to increase the offense level.

Cowan argues that a distinction must be made as to the nature of the images on his computer and that there is a difference between downloaded images and images obtained through the internet cache or internet temporary folder. In <u>*U.S. v.*</u>

_Romm,_ 455 F.3rd 990 (9th Cir.2006). Justice Bea explained the difference between the downloaded file and the internet cache as:

> The "internet cache" or "internet temporary folder" is a set of files kept by a web browser to avoid having to download the same material repeatedly. Most web browsers keep copies of all of the web pages that you have viewed, up to a certain limit, so that the same images can be redisplayed quickly when you go back to them. (Citation omitted). According to expert testimony at trial, the cache is a set of files on the user's hard drive (n. 1, <u>Romm,</u> supra @ 993).

Although <u>Romm</u>, supra, focused on the possession of the images to determine whether in fact Romm did possess child pornography, the argument is similar to exclude the 600 plus images enhancement found at U.S.S.G. 2G 2.2(b)(7)(D). See also _U.S. v. Mauldin_, 224 Fed. Appx. 915 (11th Cir. 2007).

**E. Obstruction of Justice Enhancement is Improvident**.

Paragraphs 45 and 52 of the PSI relates to Obstruction of Justice pursuant to USSG §3C1.1.[8] The defendant objects to this 2-level adjustment, arguing that "the jury simply did not credit his testimony."

 Concededly, the perjury adjustment has been applied for giving false testimony at trial, including cases where defendant's testimony is irreconcilable with the jury's verdict. Nonetheless, a higher standard of proof was suggested by the wording of Application Note 2 before it was amended in 1997. In its "reasons

---

[8]The district court agreed with defendant on a related paragraph and sustained defendant's objection to paragraph 37. (Doc. 131, 79)

45

for amendment" the Commission said that it "no longer suggests the use of a

heightened standard of proof. See, "Reason for Amendment" in Appendix C,

Amendment 566. Instead, the amendment cautioned that "inaccurate testimony or

statements sometimes may result from confusion, mistake or faulty memory and,

thus, not all inaccurate testimony or statements necessarily reflect a willful attempt

to obstruct justice. See also, <u>U.S. v. Dunnigan</u>, 507 U.S. 87, 113 S. Ct. 1111, 122

L. Ed. 2d 445 (1993).

   The district court must make independent findings that defendant willfully

attempted to obstruct justice. It is not sufficient for the court to simply find that the

jury thought defendant lied. The court must find that the misrepresentations were

willful, material to the investigation or prosecution, and made with specific intent

to obstruct justice, rather than as a result of confusion, mistake or faulty memory.

<u>U.S. v. Dobbs</u>, 11 F.3d 152 (11th Cir. 1994) [Preferring particularized findings of

what portions of defendant's testimony were perjuries, but affirming reliance on

more general findings].

   Of course, the fact that defendant's testimony is contradicted by other

witnesses or by the jury's verdict does not, by itself, require the district court to

find that the defendant committed perjury, because not all inaccurate testimony

reflects a willful attempt to obstruct justice. <u>U.S. v. Hasner</u>, 340 F.3d 1261, 62

Fed. R. Evid. Serv. 213 (11th Cir. 2003) (deferring to district court's finding that

defendant did not commit perjury).

The defendant's false statements must concern a "material" matter, that is

must be relevant to an issue in the case and capable of influencing the jury in its

decision about his guilt. The false statements must also be "willful," that is, the

defendant must know that he or she is testifying falsely. _U.S. v. Vallejo_, 297 F.3d

1154 (11th Cir. 2002) (false testimony was material in an extortion case).

Additionally, the district court must make findings in support of its decision

to impose the enhancement as to each separate count. (emphasis supplied) The

probation office's response implicates the groupable counts only, and not Count 4

and 5 which each involved the picture taking  of defendant's minor daughter. See,

e.g., _U.S. v. Perez_, 350 Fed. Appx. 425, 430 (11th Cir. Fla 2009) [reversing the

enhancement as to Count 1 but affirming same as to Count 2 in a bank robbery

case].

**F. Reduction in offense level is warranted.**

Paragraphs 29 - 38 in the PSI relating to Specific Offense Characteristic;

pursuant to USSG §2G2.2(b)(1) should have applied a reduction. The defendant

objected to the exclusion of a decrease for the offense being limited to

contingencies contained in §2G2.2(b)(1), arguing that the offense was limited to

the receipt or solicitation of child pornography.

The relevant portion reads:

> 2G2.2 Trafficking in Material Involving the Sexual Exploitation of a
> minor; Receiving, Transporting, Shipping, Soliciting, or Advertising
> Material Involving the Sexual Exploitation of a Minor; Possessing
> with Intent to Traffic; Possession Material Involving the Sexual
> Exploitation of a Minor
> (a) Base Offense Level:
> (1) 18, if the defendant is convicted of 18 U.S.C. § 1466A(b), §
> 2252(a)(4), § 2252A(a)(5), or § 2252A(a)(7).
> (2) 22, otherwise.
> (b) Specific Offense Characteristics
> (1) If (A) subsection (a)(2) applies; (B) the defendant's conduct
> was limited to the receipt or solicitation of material involving
> the sexual exploitation of a minor; and (C) the defendant did
> not intend to traffic in, or distribute, such material, decrease by
> 2 levels. U.S.S.G. § 2G2.2

By its explicit singular terms, this subsection applies. In responding to the

paragraph 29's objection, the probation office relied on other counts of conviction

to support the enhancement. Without waiver, The defendant should be allowed on

other Counts in the Indictment to support the reduction, not just the counts which

do not nor could relate to this sub-section. There is no prohibition as to the

applicability of this reduction.[9]

**F. Sexual Act/Conduct Enhancement is Improper.**

---

[9] The court stated: It's a relatively close call. It's possible it could be applied... (Doc. 131, 82-83)

Paragraphs 41 and 49 of the PSI relates Offense Involving Sexual Act or Sexual Contact pursuant to USSG §2G2.1(b)(2)(A). The defendant objected to a 2-level increase for this provision, arguing that "the commission of a sexual act or contact is not established."

While the jury verdict is adverse on Counts 4 and 5, defendant respectfully disagreed that the photos were representative of "commission of a sexual act contact" as contemplated by the guidelines.

U.S.S.G. Section 2G2.1(b)(2)(A) provides a two-level enhancement if the "offense include sexual intercourse, oral sex, and the intentional touching, either directly or through the clothing, of private areas with the intent to arouse or gratify the sexual desire of any person. See U.S.S.G. § 2G2.1 cmt. 2 (defining "sexual act" and "sexual contact" by reference to 18 U.S.C. § 2246).

18 U.S.C. 2246 § provides (in relevant portions):

> § 2246. Definitions for chapter
> As used is this chapter [18 USCS §§ 2241 et seq.]--
> (1) the term "prison" means a correctional, detention, or penal facility;
> (2) the term "sexual act" means–
> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva , or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with

49

an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; (emphasis supplied)

A commonsense reading of the entire provisions mandates some form of wilful action on the part of the alleged aggressor; none was demonstrated in the evidence at trial. Henceforth, this section is inapplicable.

### H. Multiple Count Adjustment is Improper.

Paragraphs 54 - 62 of the PSI relating to Multiple Count Adjustment pursuant to USSG §3D1.4. The defendant objected to the determination of units calculated for this adjustment, arguing that the adjustment is "unfair and unreasonable since the conduct involves the same victim in a discrete period of time."

The probation office's explanation was misguided. While the probation office cites to § 3D1.2, comment (n.3)[sic], it totally ignores an analogous example given when the event takes place on the same date i.e. U.S.S.G. § 3D1.2,

comment (note 3) [example 4 involving two counts of assault on the same officer on the same date]. (emphasis supplied)

> U.S.S.G. § D1.2 provides (in relevant portions):
> §3D1.2 Group of Closely Related Counts
> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior...

Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

1.  Subsections (a)-(d) set forth circumstances in which counts are to be grouped together into a single Group. Counts are to be grouped together into a single Group if any one or more of the subsections provide for such grouping. Counts for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment are excepted from application of the multiple count rules. See §3D1.1(b)(1),. id. comment. (n.1).

2.    The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related, In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e. to identify and group "counts involving substantially the same harm."

3.    Under subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim. When one count charges an attempt to commit an offense and the other charges the commission of' that offense, or when one count charges an offense based on a general prohibition and the other charges violation of a specific prohibition encompassed in the general prohibition, the counts will be grouped together under subsection (a).

Examples; (1) The defendant is convicted of forging and uttering the same check. The counts are to be grouped together. (2) The defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping. The counts are to be grouped together. (3) The defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive. The counts are to be grouped together. (4) <u>The defendant is</u>

52

<u>convicted of two counts of assault on a federal officer for</u> <u>shooting at the same officer twice while attempting to prevent</u> <u>apprehension as part of a single criminal episode. The counts</u> <u>are to be grouped together</u>. (5) The defendant is convicted of three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. The three counts are to be grouped together, But: (6) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts are not to be grouped together.

4.    Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm)... (emphasis supplied)

The highlighted example above more neatly fits the facts and circumstances of this case rather than the one postulated by the probation office.

**B. ___The District Court Imposed A Substantively Unreasonable Sentence.**

If this Court finds that the district court made no procedural errors at sentencing, it must determine whether, considering the totality of the circumstances, the sentence was substantively unreasonable. Gall, 552 U.S. at 51. A review of the substantive reasonableness of a sentence requires a determination

as to whether the sentence is supported by the factors laid out in 18 U.S.C. § 3553(a). Id. at 56.

Mr. Cowan's sentence of 1680 months imprisonment is substantively unreasonable. Mr. Cowan is 50 years old and in failing health. He has documented persistent thyroid problems and hypertension and high cholesterol for which he is taking prescribed medications daily. He has a history of psychological and psychiatric issues. He has had bouts with major depression and continues to suffer from major depressive disorder stemming not only from the stressors of his legal case but also related to his serious psychological and psychiatric issues. As a result, a sentence of 180 months (the highest minimum mandatory required by federal statute) in this case is more than sufficient to comply with the sentencing factors in 18 U.S.C. § 3553(a).

A sentence of 180 months, which is still a lengthy and severe sentence on a man in Mr. Cowan's position, would still meet the goals of deterrence in this case. The next 15 years he would have to serve is more than just punishment and adequate deterrence for Mr. Cowan, given his particular background his failing mental and physical health and the circumstances of his offense.

The history and characteristics of Mr. Cowan indicate that a sentence of 180 months is sufficient and appropriate in this case. Mr. Cowan has a nineteen years

54

history of employment in the local school system working as a teacher and guidance counselor. (PSR, ¶ 86). There has been no complaint from the teachers, students nor administrators over the many years of public service. In addition, there was absolutely no evidence of inappropriate (sexual) conduct of defendant at his school employment. (Doc. 89, 129). Mr. Cowan's health issues are many and require continuing medical care, treatment and medication.

In analyzing the reasonableness of Cowan's sentence, it is clear that the district Court abused its' discretion and sentenced Cowan's to an unreasonable sentence.  The nature and circumstances of the offense are a serious one and probably through the public's outcry, child pornography and sexual exploitation ranks up on the offense ladder with Capital Murder. This outcry is partly enhanced by the opined recidivism rates among those convicted of sexual crimes against minors. However, no matter how condemned and abominated the guilty are, they too are worthy of correction, redemption, and rehabilitation.

In assessing the history and characteristic of Cowan, he has demonstrated that he maintains correctional, redeeming and rehabilitative values. Cowan has no prior conviction nor involvement in sexual abuse related matters. There are no other allegations of Sexual abuse or Sexual exploitation of children, until the instant matter.  Cowan had remained crime free; not even a traffic ticket.

Cowan's characteristics include coming from a big city with a family who reared him in a loving and supportive environment as a child. And he never experienced any trauma during his formative years. After his failed adult relationships, Cowan sought counseling. Cowan has denied ever using any illegal substances, nor abuse of alcohol. Thus, Cowan has redeemable and rehabilitative qualities and characteristics. Cowan was a member of the United States Navy, an employee of the Florida Department of Law Enforcement, a Marine Corps Contractor, a church volunteer and member of the vestry, and a respected educator.

Fifteen (15) years and a lifetime of supervised release, more than adequately provides punishment that is just and respectful to the law. Cowan, having a term of "Life" for supervised release, will for the rest of his natural life, be under the watchful supervision of the federal government.

A fifteen (15) year sentence would afford adequate deterrence to any further criminal conduct of Cowan and any others, who are aware of Cowan's conviction. Cowan was Fifty (50) years old at the time of his sentencing. Serving a fifteen (15) year sentence, he would be approximately sixty-five (65) years of age, when released from prison. If Cowan is made to serve a one thousand six hundred

eighty (1680) months sentence, he will never survive the life sentence which is essentially more than a punishment, but a death sentence.

A fifteen (15) year sentence would protect the public from harm in that fifteen (15) years is time enough from society, for Cowan to be isolated, treated, and rehabilitated. And after fifteen (15) years, Cowan will be monitored by the United States Probation Office on supervised release.

A fifteen (15) year sentence is more than enough time to provide Cowan with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The district court, upon remand, can sentence Cowan to a concurrent sentence of the minimum sentences available on each count and re-impose a term of Life on supervised release as well as the continued counseling, treatment and supervision, established in the current Judgment. That sentence is a more reasonable one.

Rather than following the parsimony principle and imposing a sentence sufficient to meet the goals of sentencing, the district court instead imposed a sentence which was longer than necessary to accomplish those goals. A sentence of 1680 months simply is not justified in this case, for the reasons stated above. The sentence imposed by the district court in this case was substantively

57

unreasonable, and this Court should vacate that sentence and remand the case to the sentencing judge for resentencing.          .

## CONCLUSION

For all the reasons above, the convictions on each and every count should be reversed. Similarly, the Defendant's sentence should be vacated and the cause remanded for re-sentencing with instructions to apply the guidelines constitutionally and with due regards for the precedent set by the United States Supreme Court and this circuit.

.

Respectfully submitted,
LAW OFFICES OF
NOEL G. LAWRENCE, P.A.

---

Noel G. Lawrence, Esquire
101 East Union Street, Suite 200
Jacksonville, Florida 32202
Florida Bar No.:    844251
Telephone    (904) 356-9928
Facsimile    (904) 356-6762
Email:        nglawren@prodigy.net
Attorney for Appellant/Defendant

CERTIFICATE OF COMPLIANCE

I hereby certify that this initial brief complies with Rule 32 (a)(7)(B),

F.R.A.P, in that it contains no more than 14,000 words, that is 13,507 words and

it complies with the type-volume allowed by the rules.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that an original and six copies of the foregoing has

been furnished to **United States Court of Appeals** - 11th Circuit, 56 Forsyth

Street, NW, Atlanta, Georgia 30303, and **Judy K. Hunt, Esquire**, Assistant US

Attorney,  400 N. Tampa Street, Suite 3200, Tampa, Florida 33602 by REGULAR

U.S. MAIL this 12th    day of April, 2012.

---

Noel G. Lawrence, Esquire