No. 11-15989-FF

In the
United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROBERT COWAN,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 3:09-CR-387-J-32MCR

**BRIEF OF THE UNITED STATES**

ROBERT E. O'NEILL
United States Attorney

TODD B. GRANDY
Assistant United States Attorney
Appellate Division

JUDY K. HUNT
Assistant United States Attorney
Appellate Division
Florida Bar No. 309842
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
Telephone:   (813) 274-6000

May 24, 2012

*United States v. Robert Cowan*
No. 11-15989-FF

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons and entities identified in the certificate of

interested persons and corporate disclosure statement in Robert Cowan's

principal brief, the following person has an interest in the outcome of this case:

Grandy, Todd B., Assistant United States Attorney.[*]

---

[*]This person is being added to the United States' initial Certificate of Interested Persons and Corporate Disclosure Statement.

C-1 of 1

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement. . . . . C-1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xiv

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    Course of Proceedings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    Statement of the Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        A.   Offense conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        B.   Agent Greenmun's testimony concerning
            photographs of Cowan's daughter . . . . . . . . . . . . . . . . . .  8

        C.   Cowan's testimony and Agent
            Greenmun's rebuttal testimony. . . . . . . . . . . . . . . . . . 11

        D.   The sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            (1)   The Group One calculation. . . . . . . . . . . . . . . . 14

            (2)   The Groups Three and Four calculations . . . . . . . 17

            (3)   The grouping calculation and
                determination of sentencing range . . . . . . . . . . . . . 20

(4)    The determination of a reasonable
sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Argument and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . 27

I.    This Court should not consider Cowan's conclusory and
undeveloped allegations that Agent Greenmun's "alleged
expert testimony was improvident and improper" and, in
any event, the district court did not plainly err in failing sua
sponte to strike from the record Agent Greenmun's
comment that photographs Cowan had taken of his four-
year-old daughter, which focused on her exposed genitalia,
constitute child pornography. . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

A.    By failing to develop and support his
argument that "The Alleged Expert
Testimony Was Improvident and
Improper" Cowan has waived that
argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.    The district court did not plainly err in
failing sua sponte to conclude that Agent
Greenmun's describing the vehicle and
residence photographs as "child
pornography" implicitly was an improper
expression of an expert opinion that must
be stricken from the record. . . . . . . . . . . . . . . . . . . . . . 29

C.    The district court did not plainly err in
failing sua sponte to strike Agent Cowan's
statement as violating Fed. R. Evid. 704. . . . . . . . . . . . . . 36

iii

II.   The trial evidence was sufficient to prove Cowan's guilt
      beyond a reasonable doubt on Counts One, Two, Three,
      Six, and Seven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

III.  Cowan's sentence is procedurally and substantively
      reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

      A.   The district court's sentence is
           procedurally reasonable. . . . . . . . . . . . . . . . . . . . . . . . . 43

           (1)   The Group One adjustments. . . . . . . . . . . . . . . . . 43

                 (a)   The district court correctly set
                       Cowan's base offense level for
                       Group One at 22.. . . . . . . . . . . . . . . . . . . 44

                 (b)   The district court did not clearly err
                       in determining that Cowan
                       intentionally had received and
                       possessed images and videos that
                       displayed sadistic and violent
                       conduct towards a minor. . . . . . . . . . . . . . . 45

                 (c)   The district court did not clearly err
                       in determining that Cowan had
                       engaged in a pattern of sexually
                       abusing and exploiting a minor.. . . . . . . . . . 46

                 (d)   The district court did not clearly err
                       in determining that Cowan's receipt
                       and possession offenses involved
                       600 or more images. . . . . . . . . . . . . . . . . . 48

                 (e)   The district court did not err in
                       denying Cowan's request for a
                       downward adjustment pursuant to
                       USSG §2G2.2(b)(1). . . . . . . . . . . . . . . . . . 50

iv

(2)   The Group Three and Group
      Four adjustments. . . . . . . . . . . . . . . . . . . . . . . . . 52

      (a)   The district court did not clearly err
            in determining that Cowan had
            obstructed justice by committing
            perjury at his trial.. . . . . . . . . . . . . . . . . . . . 53

      (b)   The district court did not clearly err
            in determining that Cowan had
            sexually molested assaulted his
            daughter. . . . . . . . . . . . . . . . . . . . . . . . . . . 55

      (3)   The district court properly overruled
            Cowan's request that it combine
            Groups Two and Three.. . . . . . . . . . . . . . . 56

      (4)   In any event, any error by the
            district court in determining the
            advisory sentencing range is
            harmless because the court plainly
            enunciated its determination that a
            sentence amounting to a life
            sentence was required.. . . . . . . . . . . . . . . 58

   C.   The district court's sentence is
        substantively reasonable. . . . . . . . . . . . . . . . . . . . . 61

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

## Cases

*Daubert v. Merrell*,

    509 U.S. 579, 113 S. Ct. 2786 (1993). . . . . . . . . . . . . . . . . 27-29, 31, 32

*Draper v. Reynolds*,

    369 F.3d 1270 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Greenbriar, Ltd. v. City of Alabaster*,

    881 F.2d 1570 (11th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Kaplan v. California*,

    413 U.S. 115, 93 S. Ct. 2680 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Sweet v. Sec'y, Dep't of Corr.*,

    467 F.3d 1311 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Anderson*,

    326 F.3d 1319 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Augustin*,

    661 F.3d 1105 (11th Cir. 2011),

    *cert. denied*, No. 11-9636, 2012 WL 1106877 (U.S. Apr. 30, 2012). . . . 36

*United States v. Berringer*,

    393 F. App'x 257 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Brown*,

    327 F. App'x 526 (6th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Brown*,

    53 F.3d 312 (11th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Chambers*,

    642 F.3d 588 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Dean*,

    635 F.3d 1200 (11th Cir. 2011),

    *cert. denied*, 132 S. Ct. 755 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 63

*United States v. Dickson*,

    632 F.3d 186, 192 (5th Cir.), *cert. denied*, 131 S. Ct. 2947 (2011). . . . . . 51

*United States v. Dost*,

    636 F. Supp. 828 (S.D. Cal.1986),

    *judgm't aff'd*, 812 F.2d 1239 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . 33, 34

*United States v. Ellisor*,

    522 F.3d 1255 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 23, 43, 46

*United States v. Frazier*,

    387 F.3d 1244 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 22, 33

vii

*United States v. Gaytan*,

    649 F.3d 573 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1129 . . . . . . . . . . 35

*United States v. Goluba*,

    672 F.3d 304 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Gupta*,

    463 F.3d 1182 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 28

*United States v. Havens*,

    331 F. App'x 280 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Holt*,

    408 F. App'x 229 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*United States v. McBride*,

    511 F.3d 1293 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States v. McNerney*,

    636 F.3d 772 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. McQueen*,

    670 F.3d 1168 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 43

*United States v. Mendoza-Paz*,

    286 F.3d 1104 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Molina*,

    443 F.3d 824 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Morin*,

    627 F.3d 985, 1000 (5th Cir. 2010),

    *cert. denied*, 131 S. Ct. 2126 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Nance*,

    611 F.3d 409 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Paley*,

    442 F.3d 1273 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*United States v. Parmelee*,

    319 F.3d 583 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Rayl*,

    270 F.3d 709 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Romero*,

    189 F.3d 576 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Shafer*,

    573 F.3d 267 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1542 (2010) . . . . 56

*United States v. Shaw*,

    560 F.3d 1230 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States v. Smith*,

    459 F.3d 1276 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Talley*,

    431 F.3d 784 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States v. Williams*,

    390 F.3d 1319 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*\*United States v. Williams*,

    444 F.3d 1286 (11th Cir. 2006),

    *rev'd on other grounds*, 553 U.S. 285, 128 S. Ct. 1830 (2008). . . . . . . . . . 33

*United States v. Williams*,

    456 F.3d 1353 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 60, 61

*United States v. Williams*,

    526 F.3d 1312 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Williams v. United States*,

    503 U.S. 193, 112 S. Ct. 1112 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . 59

**Statutes**

18 U.S.C. § 2246(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

18 U.S.C. § 2251(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 46

18 U.S.C. § 2252(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 38

x

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 38

18 U.S.C. § 2256(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 60

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

18 U.S.C. § 3742(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

18 U.S.C. § 2252(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

## Rules

Fed. R. App. P. 4(b)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . xiv

Fed. R. App. P. 28(a)(9)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Fed. R. Crim. P. 52(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Fed. R. Evid. 701(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27-29, 31, 32

Fed. R. Evid. 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 36

Fed. R. Evid. 704(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## Other Authorities

11th Cir. Pattern Jury Instr. (Crim.) 82 (2010). . . . . . . . . . . . . . . . . . 34

USSG §1B1.1, comment. (n.5). . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

xi

USSG §1B1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

USSG §2A2.2(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

USSG §2F1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*USSG §2G2.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

USSG §2G2.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG §2G2.1(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG §2G2.1(b)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 55

USSG §2G2.1(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

USSG §2G2.1, comment. (n.2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*USSG §2G2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25

USSG §2G2.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

USSG §2G2.2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

USSG §2G2.2(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 50

USSG §2G2.2(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 50, 51

USSG §2G2.2(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

USSG §2G2.2(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 45, 46

USSG §2G2.2(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 46, 48

USSG §2G2.2(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

USSG §2G2.2(b)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

xii

USSG §2G2.2(b)(7)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 48

USSG §2G2.2, comment. (n.1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

USSG §2G2.2, comment. (n.4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

USSG §2R1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

USSG §3C1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 25, 53

USSG §3C1.1, comment. (n.4(B)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

USSG §3D1.1–3D1.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

USSG §3D1.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

USSG §3D1.2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

USSG §3D1.2, comment. (n.3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment against Robert Cowan on December 7, 2011, Doc. 123, and Cowan timely filed a notice of appeal on December 19, 2011, Doc. 126. *See* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction over this appeal, *see* 28 U.S.C. § 1291, and authority to examine Cowan's challenges to his sentence, *see* 18 U.S.C. § 3742(a).

## Statement of the Issues

I.  Whether this Court should consider Cowan's conclusory and undeveloped allegations that Agent Greenmun's "alleged expert testimony was improvident and improper" and whether, in any event, the district court did not plainly err in failing sua sponte to strike from the record Agent Greenmun's comment that photographs Cowan had taken of his four-year-old daughter, which focused on her exposed genitalia, constitute child pornography.

II.  Whether the trial evidence was sufficient to prove Cowan's guilt beyond a reasonable doubt on Counts One, Two, Three, Six, and Seven.

III.  Whether Cowan's sentence is procedurally and substantively reasonable.

## Statement of the Case

This direct criminal appeal involves the prosecution of Robert Cowan for producing, receiving, and possessing child pornography.  He was convicted after trial and sentenced to a guidelines-range sentence of 1680 months' imprisonment.  Cowan argues that the district court improperly permitted an expert to testify at his trial that certain images constituted child pornography, that the evidence was insufficient to convict him on some counts, that the court failed to correctly calculate the applicable sentencing guidelines range, and that his sentence is unreasonably harsh.  This Court should deny Cowan relief on all of his arguments.

### *Course of Proceedings*

In December 2010, a federal grand jury in Jacksonville, Florida, returned an indictment that charged Cowan with knowingly receiving child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(2) (Counts One, Two, and Three); producing child pornography, in violation of 18 U.S.C. § 2251(a) (Counts Four and Five), and knowingly possessing child pornography that had been produced using materials transported in interstate commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) (Counts Six and Seven). Doc. 1.

2

After a four-day trial, a jury found Cowan guilty on all counts.  Doc. 72.

The district court sentenced Cowan to serve 240 months' imprisonment on each of Counts One, Two, and Three, 360 months' imprisonment on each of Counts Four and Five, and 120 months' imprisonment on each of Counts Six and Seven, all terms to run consecutively, for a total term of 1680 months' imprisonment.  Doc. 123.

This appeal followed.  Doc. 126.

## Statement of the Facts

### A.    Offense conduct

On August 14, 2009, after Cowan had taken his four-year-old daughter to Jacksonville Beach, he photographed her while she was fastened into a car seat and dressed in a robe that had been pulled open, focusing on her exposed genitalia ("the vehicle photographs").  Doc. 89 at 191–200; GX 18–24.[1]  When he returned to their residence, Cowan photographed his daughter in the nude; in one photograph the child was touching her genitalia and in others she was provocatively posed to display her genitalia ("the residence photographs").  Doc. 89 at 200–03; GX 25–35.

---

[1] We cite to government trial exhibits as "GX" and sentencing exhibits as "GSX."

3

On August 18, 2009, at her day-care center, Cowan's daughter disclosed that Cowan had sexually molested her. Doc. 88 at 28–29. At the request of the Jacksonville Sheriff's Office, Cowan submitted to an interview and surrendered his iPhone and a laptop. Doc. 89 at 86–88. That same day, law enforcement officers seized from Cowan's home, with his wife's consent, an Apple iMac (17 in.) computer and a Maxtor external hard drive, Doc. 89 at 54–62; GX 3, 9, 10, and seized from Cowan's workplace a Toshiba external hard drive, Doc. 89 at 97–98, 137; GX 12. A few days later, law enforcement officers seized from Cowan's home, again with his wife's consent, an Apple iMac (24 in.) computer. Doc. 89 at 99–100; GX 11.

Experts in computer forensics extracted from Cowan's iPhone (which had been shipped to the United States from China) thumbnail photos, including some of the vehicle photographs; they also determined that approximately 500 to 600 additional photographs had been deleted from the device. Doc. 89 at 112–15, 141–42, 172; GX 1, 1A, 16. Department of Homeland Security Special Agent James Greenmun found on Cowan's Toshiba external hard drive (which had been shipped to the United States from China) a folder titled "check" and, inside that folder, a subfolder titled "untitled folder." Doc. 89 at 150–52, 172–73. Inside "untitled folder," Agent

4

Greenmun found copies of the vehicle and residence photographs. Doc. 89 at 173–74, 180–83, 193–97; GX 25–34. (Cowan had copied these files from the iMac (17 in.) computer onto the Toshiba external hard drive, and had attempted to delete those files from the iMac. Doc. 89 at 180, 182. Metadata confirmed that the photographs had been created on August 14, 2009, on an iPhone; some of them corresponded with the thumbnail photographs found on Cowan's iPhone. Doc. 89 at 173–74, 180–83, 193–95; GX 18–35. According to GPS data attached to the photographs, some had been taken at Jacksonville Beach, some at other locations, and some at Cowan's residence. Doc. 89 at 174–75.)

In addition, Agent Greenmun found evidence that Cowan had deleted from the Toshiba external hard drive 300 files that had been named using words and phrases indicative of child pornography. Doc. 89 at 178–79. Agent Greenmun explained that child pornographers use "very long and very descriptive" file titles to help persons seeking child pornography identify and obtain desired images. Doc. 89 at 178–79. Agent Greenmun determined that Cowan had used Lime Wire, a peer-to-peer file-sharing system, to download child pornography to his electronic devices. Doc. 89 at 188–90.

Agent Greenmun testified that he also had found:

• on Cowan's Toshiba external hard drive 7 videos and 9 still images of child pornography, including the items described in Count Seven of the indictment, Doc. 89 at 177–78, 190–91, 221–24; GX 53–55;

• on Cowan's Maxtor external hard drive (which had been shipped to the United States from China), 162 images and 4 videos of child pornography, including the items described in Count Six of the indictment, Doc. 89 at 147–49, 190–91, 220–21; GX 48–52;

• on Cowan's iMac (17 in.) computer, 6 videos—including the one described in Count Three of the indictment, which had been downloaded via the internet using Lime Wire—and 75 images of child pornography, including the vehicle and residence photographs, Doc. 89 at 182–83, 188, 219–20; GX 47;

• on Cowan's Apple PowerBook laptop computer, 1 video of child pornography and a document containing a list of search terms, including "preteen," "teen," "pedo," "pthc" (which stands for preteen hardcore), "babyshivid," and others commonly used by individuals who trade child pornography," Doc. 89 at 184–87, 216–18; GX 44; and

• on Cowan's iMac (24 in.) computer, a folder titled "/volumes" that was intended to be used to transfer files to an external device, and that

6

contained the 2 images and 12 videos of child pornography, including the videos described in Counts One and Two of the indictment; these images and videos also had been downloaded via the internet using Lime Wire, Doc. 89 at 187–88, 218–19; GX 45, 46.

Several of the videos portrayed the violent sexual abuse of infants and toddlers, including:

• one that portrayed an infant crying out in pain while being raped, GX 46;

• one that portrayed an infant being held down while being brutally raped anally and being told "good girl" when she cried out, GX 48;

• one that portrayed a nude female toddler and a male attempting to insert or rub an erect penis on her vaginal area, GX 51; and

• one that portrayed an infant being anally raped by an adult male, GX 52.

Other videos portrayed men sexually molesting prepubescent females, including having digital contact with the vaginal area and intercourse with them.  GX 47, 49.  Another video portrayed a prepubescent female whose arms and legs were bound and who was performing fellatio on an adult male. GX 53.

7

**B.**    *Agent Greenmun's testimony concerning photographs of Cowan's daughter*

During direct examination, the prosecutor asked Agent Greenmun about his examination of the Toshiba external hard drive; the testimony proceeded as follows:

> Q.    Okay.  And tell us about your examination.
>
> A.    My examination on—well, I was working on all—pretty much all of the media at the—at the same time.  I had created disk images and duplicated all of the media onto a government-owned hard drive, at which point I began—I had first discovered images of what I suspected were the produced images of child pornography on the Toshiba external hard drive.
>
> Q.    Okay. And tell us about that.
>
> A.    I discovered the images in a file—in a folder called—on the root of the Toshiba external hard drive.  It was a folder called check.  And there was a subfolder inside called untitled folder.  And this is important.  Because a new folder that is created on a Windows machine, if you right click or you just hit new folder, it comes up as new folder.  You do another one, it's called new folder one, new folder two.
>
> On a Macintosh operating system, you can do it in a very similar fashion, but it calls it untitled folder.  So I know it was a file that was made with a—presumably with a Macintosh computer system.  And then resting inside the untitled folder were, I believe, 37 pictures of—of the child in question in various stages of undress and in various different locations.
>
> Q.    Okay. And did you—were you able to look at the forensic metadata attached to those images?
>
> A.    Yes, sir.

8

Q.    And first tell us what metadata is.

A.    Yes, sir.  Photographs that are taken with a digital camera have information embedded into them.  Specifically, you'll find information concerning the make and model of the camera that's—that the picture is taken with.  It's called EXIF information.  It's spelled E-X-I-F.

It stands, I believe, for extendable information format.  And it's the extended information that is embedded into these files.

You can have resolution, but, notably, the date and time that the pictures are taken.  And in situations of Smart Phones, things like Apple iPhones in particular, the EXIF information can actually contain GPS coordinates for the exact location where the picture was taken, as well.

Q.    And in this particular case, those images that appear to be taken with the Apple iPhone, what did the metadata show for those images?

A.    The information shows that the camera that was used to take the pictures was an Apple iPhone and the pictures were taken on August 14th, 2009, around—around lunchtime.  And the GPS coordinates showed a picture that was right on the beach, which was not a pornographic picture nature—we're talking about—I'm sorry, the Toshiba—the ones that were inside the Toshiba drive were in various locations on the Northside on—I believe it's Alta or Yellow Bluff Road on the Northside.

Pictures that were—the pictures were taken of the child inside a car on—in different locations at the Yellow Bluff Road.  And there were pictures taken in—you know, in the driveway of a residence.  And the GPS information showed it was Mr. Cowan's residence at 15123 Reef Drive South in Jacksonville, Florida.  And all of the pictures inside the residence—you would see their pictures in a master—the master bedroom, the master bathroom, the hallway, and all of the—the GPS coordinates of those pictures

9

also translated back to 15123 Reef Drive South in Jacksonville, Florida, Mr. Cowan's residence.

Q.    Okay.  So, essentially, your testimony is that you found, roughly, 37 images—images depicting the child.  Of those, which depicted the child showing her genitalia to the camera?

A.    I believe the ones that are cited in the indictment—I believe 22 or 17, something along those lines.  There were quite a few.

Q.    Okay. Well, let's—if you—do you need to take a look at your report to refresh your recollection?

A.    I believe so.  Yes, sir. I wrote down—there were images focused on her genital region.  In parentheses I wrote image 1495.jpg and 1496, as well as his daughter in various stages of undress, images of his daughter in the bathroom.  I wrote bathtub, but I believe it was—or in the bathtub were located—excuse me.  I don't have it bookmarked.

Let's see.  I'm—the following paragraph, the images of child pornography consisted of images that focused on the genital region of Cowan's daughter, were images in which there was a lewd display of her genital region, are included in the following images.

There was also images which showed her in provocative positions in the bed in the master bedroom and a striptease within the hallway of the residence.  Within the total of 37 images in the series, 22 of them constitute child pornography.

Doc. 89 at 175–76.  Cowan did not object to this testimony or ask that the jury

be instructed to disregard the witness's statement that, "Within the total of 37

images in the series, 22 of them constitute child pornography."  Doc. 89 at

10

176.

## C.    *Cowan's testimony and Agent Greenmun's rebuttal testimony*

Cowan testified that he had searched for images and videos related to "ai*kid*o" and "tor*pedo*" (emphases added), with the result that he accidentally had received child pornography. Doc. 90 at 55–61. Cowan asserted that he had thought that he immediately had deleted all of the child pornography he accidentally had downloaded, and he denied having known that child pornography was stored on his computers. Doc. 90 at 64–70, 101–02. He claimed that he had stored in the "check" folder images and videos that he had not looked at, admitted that this folder had contained both child pornography and the vehicle and residence photographs, but denied having known the actual contents of the folder. Doc. 90 at 109, 130–32. He denied having seen any of the videos of child pornography found on his electronic devices. Doc. 90 at 80.

Cowan claimed that he had prepared the word-search list in order to document words and phrases he should not use when searching the internet. Doc. 90 at 62–63. On cross-examination, Cowan claimed that he even had written down the phrase "kids need sex too" to remind him to avoid using that phrase when searching the internet. Doc. 90 at 99. Cowan admitted that the

11

names of files stored on his electronic devices indicated that they contained child pornography, and that those files in fact did contain child pornography, but he claimed that he had not seen those files until his trial.  Doc. 90 at 147–49.

Cowan claimed that he accidentally had photographed his daughter's genitalia while she had been fastened in her car seat.  Doc. 90 at 73-75, 104-06.  According to Cowan, he had taken the vehicle photographs with his iPhone while he was driving; Cowan asserted that he had stretched his left arm across to photograph his daughter with his left hand, over his right shoulder, without looking, and with his eyes on the road, while steering with his right hand.  Doc. 90 at 74-75, 104-06.  Cowan claimed that he had not aimed the camera and had not known the exact images he was photographing.  Doc. 90 at 106–07.  Cowan asserted that his daughter had unzipped her jacket and had asked him to look at her and to photograph her.  Doc. 90 at 107.

Cowan testified that when he and his daughter had returned home from the beach, she repeatedly had asked him to take her picture while she was cavorting in the nude.  Doc. 90 at 76, 114, 116, 142.  He denied that the photographs had focused on or prominently displayed his daughter's genitalia, Doc. 90 at 115, or that he had directed her how to pose, Doc. 90 at 142–43.

12

He stated that the vehicle and residence photographs had made him uncomfortable, and that he "didn't think that they were necessarily that appropriate," so he had deleted them from his iPhone, but had stored them in the "check" folder before deleting them. Doc. 90 at 77–79, 108–12, 117–18. Cowan denied that the photographs would incite lust, Doc. 90 at 80, 115–16, but conceded that they "could be misunderstood," Doc. 90 at 111.

In rebuttal, Agent Greenmun testified that Cowan had downloaded the files described in Counts One and Two in July 2008, had downloaded the files described in Count Three in June 2009, and that child pornography had been found on all of Cowan's electronic media. Doc. 90 at 155–56, 159–160. Agent Greenmun also testified that Cowan had copied three file folders onto a compact disc found at his residence, one folder named "cartoon" that contained cartoon images of children being molested, one unnamed folder that contained 25 images of child pornography, and a third folder named "movies" that contained 3 videos of child pornography. Doc. 90 at 161. Forensic analysis showed that this compact disc had been created in December 2005. Doc. 90 at 162.

## D.  *The sentencing*

The probation office recommended that the district court apply the

13

grouping rules set forth in USSG §§3D1.1–3D1.5 to determine Cowan's offense level.  Presentence Investigation Report ("PSR") ¶ 27.  The probation office recommended that the court establish three groups:  Group One for Cowan's section 2252(a)(2) and (a)(4)(B) offenses (receiving and possessing child pornography (Counts One, Two, Three, Six, and Seven)); Group Two for Cowan's section 2251(a) offense related to his producing the vehicle photographs (Count Four); and Group Three for Cowan's section 2251(a) offense related to his producing the residence photographs (Count Five).  PSR ¶¶ 27–62.  Cowan argued that Counts Four and Five should be grouped together.  Doc. 131 at 98–99.  The district court overruled the objection and adopted the probation office's grouping recommendation.  Doc. 131 at 36, 98-99.

### *(1)* *The Group One calculation*

The district court calculated Cowan's offense level as to Group One (related to receipt and possession of child pornography) by:

• over objection, setting Cowan's base offense level at 22 pursuant to USSG §2G2.2;

• without objection, adding 2 levels pursuant to USSG §2G2.2(b)(2) because the depictions involved prepubescent minors;

14

• over objection, adding 4 levels pursuant to USSG §2G2.2(b)(4) because the depictions portrayed sadistic and violent conduct;

• over objection, adding 5 levels pursuant to USSG §2G2.2(b)(5) because Cowan had engaged in a pattern of activity involving sexual abuse or exploitation of a minor;

• without objection,[2] adding 2 levels pursuant to USSG §2G2.2(b)(6) for Cowan's use of a computer to receive child pornography; and

• over objection, adding 5 levels pursuant to USSG §2G2.2(b)(7)(D) for Cowan's possession of 600 or more images.

Doc. 131 at 37–72.

In deciding whether Cowan had engaged in a pattern of activity involving sexual abuse or exploitation of a minor as required for a 5-level upward adjustment pursuant to section 2G2.2(b)(5), the district court viewed a videotape, GSX 1, in which a child protection officer had interviewed Cowan's daughter on August 18, 2012, concerning Cowan's sexually molesting her, Doc. 131 at 43–59, 83–87.  During that interview the child reported that, the prior night (August 17, 2012, three days after Cowan had

---

[2]Cowan withdrew his objection to the USSG §2G2.2(b)(6) upward adjustment.  Doc. 131 at 60.

15

photographed her genitalia), Cowan had "rubbed inside [her] twat," that she

had "put his round thing in [her] mouth," and that they "made each other feel

good." GSX 1. She explained, "we rubbed each, Daddy rubbed and put his,

and I put his thing, round thing, in his, my mouth and I, and I didn't use my

teeth." GSX 1. When asked where her "twat" was, the child pointed to her

groin area, and when asked where the body part was that she had put in her

mouth she again pointed to her groin. GSX 1. The child said that her father

had rubbed her "twat" on the inside with his finger, and that he had put some

purple "rubby stuff" in it and then it had "started to hurt." GSX 1. The child

repeated several times that she had put her father's "part" in her mouth and

stated that she had seen coming out of that part "stuff that are icky,"

describing it as "white stuff" that goes on a towel. GSX 1. Cowan's daughter

explained that they had been in her parents' bedroom and that her father had

been making a video of them "making each other feel good." GSX 1. The

child said that her father previously had shown her a video on his computer

where a "lady" smaller than she was had put her father's part in her mouth,

and she demonstrated what she had seen by simulating something going in

and out of a wide-open mouth. GSX 1.

    The district court found that the interview with Cowan's daughter was

16

"entirely credible" and proved by a preponderance of the evidence that Cowan had sexually molested his daughter twice, once by digital penetration of her vagina and again by having her perform oral sex on him.  Doc. 131 at 58–60.

The district court concluded that, in addition to the two instances of sexual molestation, Cowan's taking photographs of his daughter's genitalia in the vehicle counted as a third instance of sexual exploitation, and that his taking photographs of his daughter's genitalia in the residence counted as a fourth instance of sexual exploitation, for a total of four sexual acts or contacts that supported the section 2G2.2(b)(5) adjustment.  Doc. 131 at 56–60.

The district court sustained Cowan's objection to a Group-One upward adjustment pursuant to USSG §3C1.1 for obstruction of justice, Doc. 131 at 78–80, and denied Cowan's request for a 2-level downward adjustment pursuant to USSG §2G2.2(b)(1), Doc. 131 at 81–83, which Cowan argued applied because he only had possessed child pornography as to Group One, Doc. 120 at 7–8.

Based on these calculations, the district court set Cowan's adjusted offense level at 40 for Group One.  Doc. 131 at 112.

## (2)    *The Groups Three and Four calculations*

The district court calculated Cowan's offense level as to Groups Two

17

and Three (related to production of child pornography in the vehicle and the residence, respectively) by:

• without objection, setting Cowan's base offense level at 32 pursuant to USSG §2G2.1(a);

• without objection, adding 4 levels pursuant to USSG §2G2.1(b)(1) because the offense had involved a minor under the age of 12;

• over objection, adding 2 levels pursuant to USSG §2G2.1(b)(2)(A) because relevant conduct involved the commission of a sexual act or contact;

• without objection, adding 2 levels pursuant to USSG §2G2.1(b)(5) because Cowan was the parent of the minor involved in the offense; and

• over objections, adding 2 levels pursuant to USSG §3C1.1 for Cowan's obstructing justice by providing false testimony at his trial.

Doc. 131 at 80–106.

In determining whether to adjust Cowan's Groups Two and Three offense levels upward by 2 levels pursuant to USSG §2G2.1(b)(2)(A) because relevant conduct involved the commission of sexual acts or contacts, the district court concluded that Cowan's sexual molestation of his daughter was relevant conduct and that, therefore, the adjustment was proper as to Groups Two and Three, Doc. 131 at 86–60, and, as to Group Three, found that

18

Cowan's having his daughter touch her genitalia was a sexual act of self-masturbation that additionally supported the adjustment, Doc. 131 at 100–01.

In determining whether Cowan had obstructed justice, as to Group Two the district court focused on his testimony that he had photographed his daughter over his shoulder while driving, accidentally focusing on her exposed genitalia. Doc. 131 at 97. The court stated that it "was such a blatant false statement that … it rose to the level of obstruction of justice," that the testimony was "directly material," and that it "bursts the bounds of any credulity," Doc. 131 at 93–96 (quotation at 96), and explained that this testimony "was an affront to the court, to the jury, and to everybody who was in the courtroom," Doc. 131 at 97.

As to Group Three, the district court focused on Cowan's testimony that his daughter had been cavorting and asking Cowan to photograph her, and that he simply had taken random photographs at her request. Doc. 131 at 103–106. The court concluded that "[n]obody who looks at those pictures could think that they were anything other than posed pictures," explaining, "they wouldn't be poses that a four-year old would be able to know or make without specific direction from an adult," and that "[t]hey are clearly sexual[,] [t]hey are clearly pornographic[,] [a]nd to testify otherwise is to insult the

19

intelligence of everybody who heard it and is hearing it now." Doc. 131 at 105–06. The court characterized Cowan's testimony in this regard as "blatant perjury" and noted that it was material because it was an effort to "downplay the significance of the photos, and certainly to downplay any intent that Mr. Cowan had to take pornographic pictures." Doc. 131 at 105.

Based on these calculations, the court set Cowan's adjusted offense level at 42 for Groups Two and Three. Doc. 131 at 112.

### (3)    *The grouping calculation and determination of sentencing range*

Applying the grouping rules of USSG §3D1.1–3D1.5, the district court determined that it should apply the highest offense level of the three groups—level 42—then add 3 additional levels for the three separate units, for a total offense level of 45. Doc. 131 at 112–114. The court determined that Cowan's criminal history category was I and that the applicable guidelines sentence was life imprisonment. Doc. 131 at 112–114. The court also determined that the cumulative statutory maximum penalty was 1680 months' (140 years') imprisonment. Doc. 131 at 112–114.

### (4)    *The determination of a reasonable sentence*

Cowan asked the district court to vary downward and to sentence him to between 15 and 30 years imprisonment, arguing that a 140-year sentence

20

would be unreasonably harsh.  Doc. 131 at 123–25.

The district court explained at length its evaluation of the 18 U.S.C. § 3553 sentencing factors.  Doc. 131 at 162–74.  As to the nature and circumstances of Cowan's offenses, the court observed that Cowan had possessed "particularly gruesome child pornography" that was "the gravest type of possession," that Cowan had produced pornography using his own very young daughter and that "the depravity of it is hard to describe," and that this had "led [to] or was a part of … the actual molestation of the four-year-old, not once but twice."  Doc. 131 at 163–65.  As to Cowan's history and characteristics, the court found that he had been receiving child pornography "for some time," and that, throughout the investigation and trial, and continuing through sentencing, he had been calculating and manipulative, and had displayed no remorse.  Doc. 131 at 168–70.  The court concluded that Cowan's failure to acknowledge his guilt, and that he needed recovery or rehabilitation, demonstrated that he was "particularly a danger to this community and a person that needs specific deterrence from future criminal activity," and was "an untreated predator who has either deliberately or through some slight of mind developed no insight into his own activities and has exhibited apparently no desire to change those ways."  Doc. 131 at

21

168–70.  The court emphasized that it had searched for any ground to vary

downward from the guidelines' recommended sentence of life imprisonment

but found no "justifiable reason to impose a lesser sentence."  Doc. 131 at

172–73.

The district court sentenced Cowan to the statutory maximum penalty

on each of his offenses, all to run consecutively, for a total sentence of 1680

months' (140 years') imprisonment.  Doc. 123; Doc. 131 at 175.

## Standard of Review

I.    When a defendant fails to object to opinion testimony, this Court

reviews a district court's implicit ruling that the witness was qualified to render

an opinion only for plain error.  *United States v. Frazier*, 387 F.3d 1244, 1268

(11th Cir. 2004).

II.    This Court reviews de novo the denial of a motion for judgment of

acquittal based on the sufficiency of the evidence, determining "'whether, after

viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'"  *United States v. Gupta*, 463 F.3d 1182, 1194 (11th

Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789

(1979)).  This Court resolves all reasonable inferences and credibility

22

determinations in favor of the jury's verdict. *Gupta*, 463 F.3d at 1194.

III.    This Court reviews "the district court's factual findings [at sentencing] for clear error, and its interpretation and application of the Guidelines de novo." *United States v. McQueen*, 670 F.3d 1168, 1169 (11th Cir. 2012). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008) (internal quotation marks omitted).

## Summary of the Argument

I.    Cowan failed to develop and support his claims, asserted for the first time on appeal, that alleged expert testimony was "improvident and improper" and "invade[d] the jury fact finding duties." Cowan's brief at 34–35. This Court, therefore, should not consider those claims.

In any event, the district court did not plainly err in failing sua sponte to strike Agent Greenmun's statement that the vehicle and residence photographs constituted child pornography. Taken in context, the comment does not state an opinion and certainly is not an expert opinion that would fall within the ambit of Fed. R. Evid. 702 or *Daubert*. And, even if the comment is construed

23

as a lay opinion, its admission was not plain error. The brief comment made in the middle of a four-day trial could not have affected Cowan's substantial rights in light of the overwhelming evidence and the court's having instructed the jury that it must decide whether the photographs contained lascivious exhibition of genitalia.

The district court also did not plainly err in failing sua sponte to conclude that Agent Greenmun's comment constituted an improper opinion on an ultimate fact. Fed. R. Evid. 704 bars only opinions of a defendant's mental state or intent, the comment related solely to the pornographic nature of the vehicle and residence photographs, and, in any event, the court instructed the jury that it was to decide whether to rely on any opinions and must decide for itself the nature of those photographs.

II.    The evidence of Cowan's guilt on Counts One, Two, Three, Six, and Seven was overwhelming. Cowan received and possessed numerous still images and videos of child pornography and stored them on all of his electronic devices. He also maintained a file with search terms that would assist in locating child pornography on the internet. And, the names of files stored on his devices explicitly identified the contents as being child pornography. In addition, Cowan testified and his explanations for his receipt,

24

possession, and production of child pornography strained credulity.

III.    None of Cowan's many challenges to the calculation of his offense level and the application of the grouping rules under the sentencing guidelines have merit.  After reviewing a child protective officer's interview of Cowan's daughter, the district court correctly determined that the United States had shown by a preponderance of the evidence that Cowan had molested his daughter and properly took that into account in applying USSG §§2G2.1 and 2G2.2.  The court also correctly found in applying USSG §3C1.1 that Cowan had committed perjury when he tried to explain how he accidentally had produced the vehicle and residence photographs.

Cowan asked the district court to sentence him to 360 months' imprisonment, but the court, explaining its reasoning in great detail, determined that a sentence that amounts to imprisonment for life was necessary given the depravity of Cowan's offenses and his complete lack of contrition.  Accordingly, even if the court erred in some of its guidelines determinations, (which we do not believe that it did), any error is harmless.  The record shows that the court would impose the same life sentence on remand.

The district court's guidelines-range sentence is substantively reasonable.

25

Cowan argues that the court failed to give sufficient weight to alleged health problems, but he did not bring to the court's attention any significant health issues at the time of sentencing. And, Cowan's claim that he was a good educator, family man, and member of the community is belied by his possessing sadistic and violent videos of the sexual molestation of infants and very young children, and by his producing child pornography and sexually molesting his four-year-old daughter.

## Argument and Citations of Authority

**I.    This Court should not consider Cowan's conclusory and undeveloped allegations that Agent Greenmun's "alleged expert testimony was improvident and improper" and, in any event, the district court did not plainly err in failing sua sponte to strike from the record Agent Greenmun's comment that photographs Cowan had taken of his four-year-old daughter, which focused on her exposed genitalia, constitute child pornography.**

Cowan argues for the first time that the district court violated Fed. R. Evid. 702 and *Daubert v. Merrell*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and "invade[d] the jury fact finding duties," in admitting Agent Greenmun's statement that the vehicle and residence photographs Cowan had taken of his daughter "constitute child pornography." Cowan's brief at 34-35. Because Cowan failed to develop and support these arguments, he has waived them. In any event, the district court did not plainly err in failing sua sponte to strike this portion of Agent Greenmun's testimony.

**A.    By failing to develop and support his argument that "The Alleged Expert Testimony Was Improvident and Improper" Cowan has waived that argument.**

Pursuant to Fed. R. App. P. 28(a)(9)(A), the argument in an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant

27

relies." Thus, to properly raise an issue before this Court, an appellant must do more than include in his brief broad, conclusory statements alleging error. *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318 n.2 (11th Cir. 2006) (declining to address due process claim when appellant presented no argument or citation of authority to support it); *United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) (deeming waived an appeal that lacked argument and citation to legal authority); *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir. 2004) ("Draper also asserts in passing that excessive force was used in handcuffing him and in placing him in the police car. However, his brief on appeal fails to argue the merits of these claims, and we view them as waived."); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (deeming issue waived where party failed to include substantive argument and only made passing reference to order appealed from).

In his brief, Cowan includes a brief summary of the *Daubert* factors for determining the reliability of expert witnesses, but he does not even allege that—much less explain why—Rule 702 or *Daubert* apply to Agent Greenmun's testimony. Cowan's brief at 34-35. Instead, Cowan simply broadly asserts that it was "a back-door attempt to introduce salacious and prejudicial information at trial." Cowan's brief at 34–35. This type of

conclusory allegation does not constitute an argument sufficient to satisfy the requirements of Rule 28(a)(9)(A).  Accordingly, Cowan has waived his contentions that the district court plainly erred in failing sua sponte to conclude that Rule 702 and *Daubert* applied to Agent Greenmun's testimony.

Similarly, with no record citation, no citation to legal authority, and no discussion, Cowan includes in his brief the conclusory assertion that Agent Greenmun's testimony "invade[d] the jury fact finding duties."  Cowan's brief at 35.  This conclusory allegation also does not constitute an argument sufficient to satisfy the requirements of Rule 28(a)(9)(A).

In these circumstances, this Court should not consider Cowan's Argument I.

**B.    The district court did not plainly err in failing sua sponte to conclude that Agent Greenmun's describing the vehicle and residence photographs as "child pornography" implicitly was an improper expression of an expert opinion that must be stricken from the record.**

Cowan includes an abbreviated excerpt of Agent Greenmun's testimony in his brief at page 34 that obscures the actual purpose of the challenged testimony, which was not to have Agent Greenmun opine on the nature of images at issue, but for him to explain what he had found in the "check" folder on the Toshiba hard drive and on Cowan's iPhone with regard to the

29

production counts (Counts Four and Five). See Doc. 89 at 175–76. It was

significant that Cowan had placed the vehicle and residence photographs in

that folder because he had stored other child pornography in the same folder.

Doc. 89 at 175–76. Agent Greenmun explained that he had found the

photographs identified in Counts Four and Five of the indictment in that

folder; to ensure that his testimony was accurate, he ultimately read from his

investigative report:

> Q.    Okay. So, essentially, your testimony is that you found, roughly, 37 images—images depicting the child. Of those, which depicted the child showing her genitalia to the camera?
>
> A.    I believe the ones that are cited in the indictment—I believe 22 or 17, something along those lines. There were quite a few.
>
> Q.    Okay. Well, let's—if you—do you need to take a look at your report to refresh your recollection?
>
> A.    I believe so. Yes, sir. I wrote down—there were images focused on her genital region. In parentheses I wrote image 1495.jpg and 1496, as well as his daughter in various stages of undress, images of his daughter in the bathroom. I wrote bathtub—but I believe it was—or in the bathtub were located—excuse me. I don't have it bookmarked.
>
> Let's see. I'm—the following paragraph, the images of child pornography consisted of images that focused on the genital region of Cowan's daughter, were images in which there was a lewd display of her genital region, are included in the following images.

There was also images which showed her in provocative positions in the bed in the master bedroom and a striptease within the hallway of the residence. Within the total of 37 images in the series, 22 of them constitute child pornography.

Doc. 89 at 175–76.

First, taken in context, it is clear that Agent Greenmun's use of the short-hand label "child pornography" was not intended as an expression of an opinion. Instead, it was intended to advise the jury of how many of the photographs Cowan had taken on August 14, 2010, involved exposed genitalia and had been included in the indictment, and how many were not. To explain the charges, Agent Greenmun recited the conclusion he had reached in his report—that 22 of the photographs constituted child pornography. See Doc. 89 at 175–76.

Nonetheless, even if this Court were to construe Agent Greenmun's comment as stating an opinion, it should conclude that the district court did not plainly err in failing sua sponte to strike that testimony as violating either Rule 702 or *Daubert*, which relates exclusively to Rule 702. Agent Greenmun's testimony was not "based on scientific, technical, or other specialized knowledge" such that he would have needed to be qualified as an expert pursuant to Rule 702. *See* Fed. R. Evid. 701(c); *United States v. Smith*, 459 F.3d 1276, 1297 n.18 (11th Cir. 2006) (no plain error from witness's

31

characterizing images as pornographic images of young girls; such testimony was not an expert opinion that could be offered only under Rule 702). Moreover, that juries, which plainly are not Rule 702 experts, must ultimately determine whether an image constitutes child pornography establishes that the issue of whether an image is pornographic does not require expert testimony. *See United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) ("the question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact"); *cf. Kaplan v. California*, 413 U.S. 115, 121, 93 S. Ct. 2680, 2685 (1973) (expert testimony on obscenity not required when allegedly obscene material is in evidence). Accordingly, Cowan cannot establish plain error on the ground that the admission of this evidence violated Rule 702 and *Daubert*, the only ground for relief that Cowan raises in his brief.

Nonetheless, even if this Court were to construe Agent Greenmun's statement as expressing a lay opinion that the images constituted child pornography, the district court still did not plainly err in failing sua sponte to strike that testimony. When a defendant fails to object to opinion testimony, this Court reviews a district court's implicit ruling that a witness was qualified to render an opinion only for plain error, and reverses on that ground "only where (1) there is an error; (2) the error is plain or obvious; (3) the error affects

32

the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Frazier*, 387 F.3d 1244, 1268 n.21 (11th Cir. 2004).

Agent Greenmun's comment in the middle of a four-day trial could not have affected Cowan's substantial rights in light of the overwhelming evidence and the jury instructions. In *United States v. Williams*, 444 F.3d 1286, 1299 n.62 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285, 128 S. Ct. 1830 (2008), this Court noted the wide use of the factors set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal.1986), *judgm't aff'd*, 812 F.2d 1239 (9th Cir. 1987), to determine "whether a picture constitutes a 'lascivious exhibition of the genitals or pubic area' under child pornography law." According to *Dost*,

> [T]he trier of fact should look to the following factors, among any others that may be relevant in the particular case: 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

33

636 F. Supp. at 832.  This Court has incorporated consideration of these factors in the definition of "lascivious exhibition" contained in its pattern jury instructions, *see* 11th Cir. Pattern Jury Instr. (Crim.) 82 (2010), and the district court instructed the jury in Cowan's case in accordance with this definition, Doc. 91 at 54.

The jury saw the vehicle and residence photographs and quite obviously rejected Cowan's incredible testimony, Doc. 90 at 77–80, 108–18, that although the photographs were not necessarily "appropriate," and could be "misunderstood," they had not been intended to incite lust.  The evidence that the photographs involved lascivious exhibition was overwhelming, given that the vehicle photographs focused on the four-year-old child's exposed genitalia and the residence photographs focused on the display of her genitalia in a suggestive manner and in unnatural poses, and quite obviously had involved Cowan coaching the child both to display and to touch her genitalia.  GX 18–34.  Moreover, in some photographs, the child posed on an adult bed—a location associated with sexual activity, GX 18–34—and, Cowan's possession of other images and videos that focused on the rape and sexual abuse of very young children, GX 46–55, supported the inference that he deliberately had taken pornographic photographs of his daughter and had not, as he claimed,

34

managed to take a series of sexually suggestive images that focused on her genitalia only by accident.

Thus, because it is "impossible to conclude that the exclusion of this small portion of the agent's [improper expert opinion] testimony would have caused the jury to reach a different verdict … the admission of this small bit of testimony does not qualify as plain error." *United States v. Gaytan*, 649 F.3d 573, 583 (7th Cir. 2011) (finding no plain error due to improper implicit lay opinion testimony that reference to "'two big ones' meant two ounces of crack cocaine") (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 1129; *see also United States v. Morin*, 627 F.3d 985, 1000 (5th Cir. 2010) ("Given the volume of evidence produced by the government … we are persuaded that Morin has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for the illegitimate aspects of Agent Minnick's [opinion] testimony."), *cert. denied*, 131 S. Ct. 2126 (2011); *United States v. Mendoza-Paz*, 286 F.3d 1104, 1113–1114 (9th Cir. 2002) (when defendant's testimony was improbable on subject of prior improper opinion testimony "it is highly unlikely that the outcome of the district court proceedings would have been different" absent agent's comment and, therefore, the comment did not seriously affect fairness, integrity or public

35

reputation of judicial proceedings).

Accordingly, although Cowan does not challenge Agent Greenmun's comment on the ground that it was an improper lay opinion, if he had done so, he still would have failed to show that the district court plainly erred in failing sua sponte to strike Agent Greenmun's comment that the images constituted child pornography.

## C. The district court did not plainly err in failing sua sponte to strike Agent Cowan's statement as violating Fed. R. Evid. 704.

Cowan, again with no citation of authority, states that Agent Greenmun's statement "invade[d] the jury fact finding duties," another conclusory allegation. Cowan's brief at 35. Nonetheless, the district court did not plainly err in failing sua sponte to strike Agent Greenmun's statement as violating Fed. R. Evid. 704.

Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Indeed, the rule only limits opinions on ultimate issues related to a defendant's "mental state or condition." *See United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011) (Rule 704 only applies to expert testimony that actually states an opinion on a defendant's state-of-mind), *cert. denied*, No. 11-9636, 2012 WL 1106877 (U.S. Apr. 30, 2012);

36

*United States v. Romero*, 189 F.3d 576, 586 (7th Cir. 1999) (when agent's testimony regarding child molesters and pornographers "did not amount to a statement of his belief about what specifically was going through [the defendant's] mind," it did not violate Rule 704). Agent Greenmun's statement, Doc. 89 at 175–76, was strictly limited to the nature of the images and did not address Cowan's intent in photographing his daughter.

Furthermore, even if the jury had perceived the agent's comment as expressing an opinion that the images constituted child pornography, the district court instructed the jury that it was to decide for itself whether to rely upon any opinions, Doc. 91 at 51, and that it must decide whether the United States had proved beyond a reasonable doubt whether the images Cowan had produced involved lascivious exhibition, Doc. 91 at 53–57. Thus, Agent Greenmun's brief comment could not have significantly influenced the jury's decision.

Accordingly, if not waived, this Court should deny Cowan any relief on this argument.

## II. The trial evidence was sufficient to prove Cowan's guilt beyond a reasonable doubt on Counts One, Two, Three, Six, and Seven.

Cowan challenges the sufficiency of the evidence that he knowingly

37

received child pornography, in violation of 18 U.S.C. § 2252(a)(2), as alleged in Counts One, Two, and Three, and that he knowingly possessed child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), as alleged in Counts Six and Seven. Cowan's brief at 35–38. The evidence, however, particularly when viewed in the light most favorable to the United States, *see United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006), sufficiently proved Cowan's guilt on all challenged counts.

Section 2252(a)(2) prohibits any person from knowingly receiving in or affecting interstate commerce, including by computer, a visual depiction of a minor engaging in sexually explicit conduct. Section 2252(a)(4)(B) prohibits the knowing possession of any material that contains an image of child pornography that was transported in or affecting interstate commerce by any means, including by computer, or that was produced using materials that were transported in or affecting interstate by any means, including by computer.

The evidence that Cowan had deliberately—and not accidentally—received and possessed child pornography was overwhelming. The pornographic images and videos were found on all of Cowan's electronic devices, including:

   • the Toshiba external hard drive (7 movies and 9 still pictures), Doc. 89

at 177–78, 190–91, 221–24; GX 53–55;

• the Maxtor external hard drive (162 images and 4 videos), Doc. 89 at 147–49, 190–91, 220–21; GX 48–52;

• the 17 inch iMac (6 videos and 75 images), Doc. 89 at 182–83, 188, 219–20; GX 47;

• the Apple PowerBook laptop computer (1 video), Doc. 89 at 184;

• the 24 inch iMac (2 images and 12 videos), Doc. 89 at 187–88, 218–19; GX 45, 46; and

• the compact disc (25 images and 3 videos), Doc. 90 at 161–62.

Moreover, Cowan maintained a list of search terms commonly used by individuals who download and trade child pornography.  Doc. 89 at 184–87, 216–18; GX 44.

In addition, the names of the files in which the child pornography was stored explicitly described their content:

• "T-48750620-hot spermed little girl mix (porno-lolitas-preteens-reelkiddymov-r@ygold-hussyfan-underage-girls-children-pedofilia-pthc-ptsc-xxx-sexy).mpeg" (GX 45 (Count One));

• "Preview-T-28901264-Kinderficker Pthc Ptsc Hussyfan R@Ygold Kingpass Qqaazz I Fuck My 1.mpg" (GX 46 (Count Two));

39

• "T-61943812-PTHC JrH555(cum inside pedo pussy!!!)_juicy preteen fuck_dont miss!!!.mpg" (GX 47 (Count Three));

• "qqaazz pthc pedo - kyky(anal,crying) 2yo girl cries while daddy fucks her ass - PLEASE post more like this_Pthc-!!!New.mpg" (GX 48 (Count Six));

• "Qqaazz Butt Fuck With Dad Delights 4Yo 5Yo Girl - Logicalreality.mpeg" (GX 49 (Count Six));

• "qqaazz pthc pedo 1yo girl about to be fucked 03b.jpg" (GX 50 (Count Six));

• "qqaazz pthc pedo baby girl gets fingered and fucked 06.jpg" (GX 51 (Count Six));

• "Qqaazz Pthc Pedo Baby Girl Getting Screwed 9.jpg" (GX 52 (Count Six));

• "#(Pthc) 9Yo Jenny Blows Dad & Dog.mpg" (GX 53 (Count Seven));

• "PEDO qqaazz #04 pthc maryanne NEW NOVEMBER 2007 CUM ON MY DAUGHTER pedo incest 6yo girl italy(1).jpg"  (GX 54 (Count Seven)); and

• "Qqaazz Pthc Pedo 1Yo Girl About To Be Fucked 02.jpg" (GX 55 (Count Seven)).

Agent Greenmun explained that child pornographers use these long and

40

descriptive file titles to help persons seeking child pornography to identify and obtain desired images.  Doc. 89 at 178–79.

Furthermore, Cowan testified in his own defense and the jury was entitled to consider that testimony as substantive evidence of his guilt.  *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case, …  a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt, … [and] when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true") (internal quotation marks omitted).

Here, a reasonable jury easily could have found Cowan's testimony so incredible that it proved his guilt, particularly his claims that:  (1) he had photographed his daughter over his shoulder while driving, managing to repeatedly—and allegedly accidentally—focus on her exposed genitalia, Doc. 90 at 73–75, 104–107; (2) his daughter on her own repeatedly had provocatively displayed her genitalia while Cowan photographed her in the residence, Doc. 90 at 76, 114–15, 142–43; (3) he accidentally had downloaded child pornography while searching for "aikido" and "torpedo," Doc. 90 at

41

55–61; (4) he had been unaware that he possessed pornographic images and videos of children despite having stored those items on multiple devices, including a compact disc, which Cowan could have created only by deliberately choosing which files to save, Doc. 89 at 147–49, 177–91, 219–24; Doc. 90 at 160–62; and (5) he had created the search-name folder to remind himself of what words and phrases not to use when searching the internet, Doc. 90 at 62–63, 99.

When Cowan denied under oath his knowing possession and receipt of child pornography, the jury, hearing what he said and observing his demeanor, "was entitled to disbelieve [his] testimony and, in fact, to believe the opposite of what [he] said." *United States v. Williams*, 390 F.3d 1319, 1325–1326 (11th Cir. 2004). Indeed, the rule that a defendant's denial of guilt may prove the elements of the offense "applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, [as in Cowan's case,] the defendant's intent or knowledge." *Id.* at 1326 (internal quotation marks omitted).

Accordingly, the district court correctly concluded that sufficient evidence supported Cowan's convictions on Counts One, Two, Three, Six, and Seven.

42

## III.    Cowan's sentence is procedurally and substantively reasonable.

Cowan challenges the district court's calculation of his offense level and the substantive reasonableness of his sentence.  The court, however, correctly calculated the offense level and then imposed a reasonable sentence.

### A.    The district court's sentence is procedurally reasonable.

This Court reviews "the district court's factual findings [at sentencing] for clear error, and its interpretation and application of the Guidelines de novo."  *United States v. McQueen*, 670 F.3d 1168, 1169 (11th Cir. 2012).  "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008) (internal quotation marks omitted).

### (1)    *The Group One adjustments*

The district court grouped Cowan's convictions on Counts One, Two, Three, Six, and Seven into Group One.  Doc. 131 at 36.  Cowan attacks many of the upward adjustments the court applied to determine the offense level for Group One, as well as the court's refusal to apply a requested downward adjustment.  Cowan's brief at 39–45, 47–48.  This Court should sustain the

district court's determination, Doc. 131 at 112, that the adjusted offense level for Group One was level 40.

(a)   *The district court correctly set Cowan's base offense level for Group One at 22.*

USSG §2G2.2(a)(1) provides that a defendant's base offense level is 18 if he is convicted of certain enumerated statutory offenses, including 18 U.S.C. § 2252(a)(4).  Otherwise, USSG §2G2.2(a)(2) sets the offense level at 22.  Cowan was convicted of offenses listed in section 2G2.2(a) (Counts Six and Seven) and of other offenses not listed (Counts One through Five).  Doc. 72.  As the district court explained, Doc. 131 at 38, pursuant to USSG §1B1.1, comment. (n.5), the "provision that results in the greater offense level" applies.

Cowan argues that section 1B1.1 does not apply to sections or subsections of guidelines provisions, citing *United States v. Anderson*, 326 F.3d 1319, 1331 (11th Cir. 2003).  Cowan's brief at 40–41.  *Anderson*, however, only briefly mentioned section 1B1.1, and not in a comparable context; it concluded that when USSG §§2F1.1 and 2R1.1 "equally apply," sentencing courts should "apply the provision that results in the greater offense level," but it did not limit section 1B1.1 to only conflicts among main guidelines provision.  326 F.3d at 1331 n.4 (citing USSG §1B1.1, comment. (n.5)).  Moreover, section 1B1.1, comment (n.5) itself resolves Cowan's argument against him:  it

44

provides as an example the provision's application to the various subparts of USSG §2A2.2(b)(2) that concern discharging, using, or brandishing a firearm.

Accordingly, this Court should reject Cowan's contention that the district court erred in setting his base offense level at 22.

(b)     *The district court did not clearly err in determining that Cowan intentionally had received and possessed images and videos that displayed sadistic and violent conduct towards a minor.*

USSG §2G2.2(b)(4) provides for a 4-level upward adjustment if materials involving sexual exploitation of a minor "portray[ed] sadistic or masochistic conduct or other depictions of violence."

Cowan argues that the United States presented insufficient evidence that he had intended to receive and possess the sadistic and violent images and videos found on his electronic devices. Cowan's brief at 41–43. The district court, however, observed that "the jury clearly rejected the defendant's statement that he accidentally downloaded this material or that it was inadvertent," and concluded that, "under any view of the evidence, the jury would have had to find beyond a reasonable doubt that that was not so." Doc. 131 at 43. Indeed, as demonstrated in our Argument II, overwhelming evidence showed that Cowan knowingly and intentionally had possessed the images and videos.

45

Accordingly, the district court's factual finding is not clearly erroneous and, given the weight of the evidence, Cowan has failed to show any reason for this Court to conclude that the district court mistakenly applied the section 2G2.2(b)(4) adjustment. *See Ellisor*, 522 F.3d at 1273 n. 25.

(c)     *The district court did not clearly err in determining that Cowan had engaged in a pattern of sexually abusing and exploiting a minor.*

USSG §2G2.2(b)(5) provides for a 5-level upward adjustment "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." A "pattern of activity" means "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant." USSG §2G2.2, comment. (n.1). Sexual exploitation includes conduct described in 18 U.S.C. § 2251(a), *id.*, which criminalizes persuading a minor to engage in "sexually explicit conduct," which in turn includes masturbation and the "lascivious exhibition of the genitals or pubic area of any person," *see* 18 U.S.C. § 2256(2)(A). Sexual exploitation also includes sexual abuse that would be an offense under state law. USSG §2G2.2, comment. (n.1).

Cowan argues that photographing his daughter does not qualify as sexual abuse or exploitation, and he objects to the district court's taking into account his molestation of his daughter on the ground that the evidence of the

46

molestation was not credible and that he had no fair opportunity to rebut it. Cowan's brief at 43-44. The district court, however, correctly concluded, Doc. 131 at 56–58, that both instances of Cowan's production of child pornography—in the vehicle and in the residence—qualify as incidents of sexual exploitation of a minor. Those photographs, GX 18–34, included lascivious exhibition of genitalia, and one photograph depicted self-masturbation. *See United States v. Parmelee*, 319 F.3d 583, 587 n.5 (3d Cir. 2003) (adjustment for pattern of activity involving sexual exploitation of a minor applies when defendant uses minor to produce child pornography); *United States v. Brown*, 327 F. App'x 526, 535–536 (6th Cir. 2006) (defendant who had minors engage in sexually explicit conduct to produce visual depictions was subject to pattern-of-activity enhancement).

Moreover, the district court found that Cowan had sexually abused his daughter twice, once by digital penetration of her vagina and again by having her engage in oral sex. Doc. 131 at 58–60. And, contrary to Cowan's contention, the court specifically found the child's description of the sexual abuse credible, Doc. 131 at 58–60, and nothing prevented Cowan from attempting to rebut his daughter's statements.

Accordingly, this Court should reject Cowan's contention that the

district court erred in adjusting his offense level pursuant to section

2G2.2(b)(5).

(d)     *The district court did not clearly err in determining that Cowan's receipt and possession offenses involved 600 or more images.*

USSG §2G2.2(b)(7)(D) provides for a 5-level upward adjustment if the

offense involved 600 or more pornographic images of children.  Each

photograph counts as one image and each video counts as 75 images.  USSG

§2G2.2, comment. (n.4).

Cowan contends that the district court improperly counted duplicate

images and videos, and also improperly counted images and videos that were

retrieved from internet caches and temporary folders.  Cowan's brief at 44-45.

In order to prevail on this argument, Cowan must identify the images that

purportedly were duplicates or temporary files.  *See e.g.*, *United States v. Havens*,

331 F. App'x 280, 282 (5th Cir. 2009) (defendant bore burden to demonstrate

that images and videos containing child pornography were duplicates).  Yet,

Cowan failed to identify either in his sentencing memorandum or at his

sentencing even one alleged duplicate image, or even one image extracted

from internal caches and temporary files.  Docs. 121, 131.

In any event, at trial, Agent Greenmun explained that he had found:

• on Cowan's Toshiba external hard drive 7 videos, which count as 525

48

images, and 46 still images, Doc. 89 at 177–78, 190–91, 221–24;

• on Cowan's Maxtor external hard drive 4 videos, which count as 300 images, and 162 still images, Doc. 89 at 147–49, 190–91, 220–21;

• on Cowan's iMac (17 in.) computer 6 videos, which count as 450 images, and 75 still images, Doc. 89 at 182–83, 188, 219–20;

• on Cowan's Apple PowerBook laptop computer 1 video, which counts as 75 images, Doc. 89 at 184–87, 216–18;

• on Cowan's iMac (24 in.) computer 12 videos, which count as 900 images, and 2 still images, Doc. 89 at 187–88, 218–19; and

• on a compact disc 3 videos, which count as 225 images, and 15 still images, Doc. 90 at 161–62.

Based on this testimony, the total number of images for sentencing purposes is 2775. Although Agent Greenmun stated that he had found the images of Greenmun's daughter stored in several places, Doc. 89 at 182, and had found one duplicate video, Doc. 89 at 228, these isolated incidents of duplicate images do not come close to the 2176 images Cowan would have to eliminate to have the number of images be less than 600.

And, Cowan has failed to cite any authority in support of his contention that duplicates should not count. Cowan's brief at 44–45. To our knowledge,

the only appellate court to address the issue in a published opinion concluded that "duplicate digital images, like duplicate hard copy images, should be counted separately for purposes of calculating a sentence enhancement pursuant to § 2G2.2(b)(7)." *United States v. McNerney*, 636 F.3d 772, 776–780 (6th Cir. 2011). In reaching this conclusion, the Court analyzed Congress's direct role in formulating the child pornography sentencing guidelines, particularly section 2G2.2(b)(7). *Id.*

Accordingly, this Court should reject Cowan's contention that the district court erred in adjusting his offense level upward by 5 levels for his having possessed 600 or more images of child pornography.

(e)    *The district court did not err in denying Cowan's request for a downward adjustment pursuant to USSG §2G2.2(b)(1).*

USSG §2G2.2(b)(1) provides for a 2-level downward adjustment to the offense level: (A) if, as occurred in Cowan's case, section 2G2.2(a)(2), which sets the base offense level at 22, applies; (B) if "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor"; and (C) "the defendant did not intend to traffic in, or distribute, such material."

Cowan argues that the district court should have applied the downward adjustment as to Group One because the offenses in that Group were limited

50

to his receipt and possession of child pornography.  Cowan's brief at 47–48.

USSG §1B1.3, related to relevant conduct, however, required the district court

to take into account all the child pornography that Cowan possessed, not

merely the few items listed in Counts One, Two, Three, Six, and Seven.  *See*

*United States v. Nance*, 611 F.3d 409, 416–17 (7th Cir. 2010) (all child

pornography possessed contemporaneously with that constituting offense

conduct was relevant conduct).

Moreover, Cowan actually had produced some of the child pornography

that he possessed and, therefore, his conduct was not limited to the mere

possession or receipt that section 2G2.2(b)(1) requires.  *See United States v.*

*Dickson*, 632 F.3d 186, 192 (5th Cir.) (because defendant possessed violent

images on same electronic device containing child pornography he had

produced, he possessed those images during the commission of acts of

production), *cert. denied*, 131 S. Ct. 2947 (2011).

In addition, Cowan distributed pornography when he showed his

daughter a video of a man and a child engaging in sexual activity.  GSX 1.  *See*

*United States v. Goluba*, 672 F.3d 304, 307 (5th Cir. 2012) (section 2G2.2(b)(1)

downward adjustment does not apply when defendant "[r]ather than limiting

his conduct to the receipt or solicitation of such images … sought to entice

51

minors to engage in sexually explicit conversations and sexual acts"); *United States v. Berringer*, 393 F. App'x 257, 263–264 (6th Cir. 2010) (section 2G2.2(b)(1) downward adjustment does not apply when defendant showed pornographic materials to children).

Finally, Cowan's sexual abuse of his daughter was related to the possession and distribution of the pornographic video that he showed his daughter, because that possession and distribution quite obviously was intended to groom his daughter for sexual encounters. *See United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011) (child sexual abuse often carried out through a period of grooming, which includes "deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity").

Therefore, the district court correctly denied Cowan's request for a downward adjustment.

In sum, contrary to Cowan's many arguments, the district court correctly determined that Cowan's offense level for Group One was 40.

**(2)    *The Group Three and Group Four adjustments***

Cowan attacks two upward adjustments that the district court applied to

determine the offense levels for Groups Two and Three.  Cowan's brief at

45–50.  This Court should sustain the district court's determination, Doc. 131

at 112, that the adjusted offense levels for Groups Two and Three were both

42.

(a)     *The district court did not clearly err in determining that Cowan had*
        *obstructed justice by committing perjury at his trial.*

USSG §3C1.1 provides for a 2-level upward adjustment when a

defendant "willfully … attempted to obstruct or impede the administration of

justice with respect to the [ ] prosecution [ ] of the instant offense of

conviction."  USSG §3C1.1, comment. (n.4(B)) states that this adjustment

applies when a defendant commits perjury pertaining to the offense of

conviction.

Cowan fails to identify in his brief any error in the district court's finding

that he had committed perjury, instead suggesting that the court failed to make

the required independent finding that any false statements had been willful

and material.  Cowan's brief at 45–47.

As to Group Two, the district court focused on Cowan's testimony that

he had photographed his daughter over his shoulder while driving,

accidentally focusing on her exposed genitalia.  Doc. 131 at 97.  The court

stated that it "was such a blatant false statement that … it rose to the level of

53

obstruction of justice," that the testimony was "directly material," and that it "bursts the bounds of any credulity." Doc. 131 at 93–96 (quotation at 96). The court further explained that this testimony "was an affront to the court, to the jury, and to everybody who was in the courtroom." Doc. 131 at 97. Accordingly, the district court made an independent finding that Cowan had committed perjury, and the materiality of his false explanation for having produced child pornography is apparent because it concerned the intent element of his offense.

As to Group Three, the district court focused on Cowan's testimony that his daughter had been cavorting and asking Cowan to photograph her, and that he simply had taken random photographs at her request. Doc. 131 at 103–106. The court concluded that "[n]obody who looks at those pictures could think that they were anything other than posed pictures," explaining, "they wouldn't be poses that a four-year old would be able to know or make without specific direction from an adult," and that "[t]hey are clearly sexual[,] [t]hey are clearly pornographic[,] [a]nd to testify otherwise is to insult the intelligence of everybody who heard it and is hearing it now." Doc. 131 at 105–06. The court characterized Cowan's testimony in this regard as "blatant perjury" and noted that it was material because it was an effort to "downplay

54

the significance of the photos, and certainly to downplay any intent that Mr. Cowan had to take pornographic pictures." Doc. 131 at 105. Accordingly, again, the district court made an independent finding that Cowan had committed perjury, and, again, the materiality of his false explanation for having produced child pornography is apparent because it concerned the intent element of his offense.

Accordingly, this Court should sustain the district court's upward adjustments for Cowan's obstruction of justice.

(b)   *The district court did not clearly err in determining that Cowan had sexually molested assaulted his daughter.*

USSG §2G2.1(b)(2)(A) provides for a 2-level upward adjustment if the offense involved "the commission of a sexual act or sexual contact." The term "sexual act" includes any "contact between the mouth and the penis" and includes the "intentional touching, not through the clothing, of the genitalia." USSG §2G2.1, comment. (n.2); 18 U.S.C. § 2246(2).

Cowan argues that no evidence supported the section 2G2.1(b)(2)(A) adjustment. Cowan's brief at 49–50. To the contrary, the United States submitted an interview with Cowan's daughter, which proved that Cowan had sexually molested her. GSX 1. In addition, that Cowan had his daughter touch her genitals for one photograph also supported the adjustment. *See*

55

*United States v. Shafer*, 573 F.3d 267, 272 (6th Cir. 2009) (self-masturbation constitutes sexual contact sufficient to support section 2G2.1(b)(2)(A) enhancement), *cert. denied*, 130 S. Ct. 1542 (2010).

Furthermore, Cowan's photography sessions plainly were another attempt at grooming; the child reported that she and her father had been making a video after Cowan had shown her a video of a child engaging in sexual conduct with her father.  GSX 1.  Cowan used the ploy of creating a similar video, and photographing his daughter a few days earlier fed into that ploy.  Therefore, the sexual molestation that followed the photography sessions are relevant conduct to Cowan's production offenses.  *See United States v. Holt*, 408 F. App'x 229, 238 (11th Cir. 2010) (sexual abuse is relevant conduct to production of pornographic images and supports section 2G2.1(b)(2)(A) enhancement).

Accordingly, this Court should sustain the district court's upward adjustments for the offenses having involved sexual acts and contact.

**(3)**    ***The district court properly overruled Cowan's request that it combine Groups Two and Three****.

Cowan contends that the district court erred in not grouping his production-of-child-pornography offenses (Counts Four and Five) because the offense conduct was closely related.  Cowan's brief at 50–53.  As the court

56

correctly concluded, Doc. 131 at 99–100, however, USSG §3D1.2(d) specifically excludes grouping these offenses (although it does provide that exclusion "under this subsection does not necessarily preclude grouping under another subsection").

Quoting extensively from commentary to section 3D1.2, Cowan suggests that the district court should have grouped the offenses under section 3D1.2(a) because they constituted a single criminal episode involving a single victim.  Cowan's brief at 50-53.  Cowan particularly relies on an example in section 3D1.2, comment. (n.3), which states that offenses involving an assault on a federal officer should be grouped when the defendant shot the officer twice while attempting to escape.  Cowan's brief at 50–53.  Section 3D1.2(a), however, requires that counts "involve … the same act or transaction."  But here, Cowan conducted two completely different photography sessions, one session with his daughter strapped into a car-seat with her clothing pushed aside to display her genitalia, and a second session with his daughter nude and posing to provocatively expose her genitalia.  GX 18–34.  These two events do not "represent essentially a single injury" and are not "part of a single criminal episode or transaction."  USSG §3D1.2, comment. (n.3).  Indeed, the second episode represents an escalation:  during the first session the child was passive,

57

even physically restrained, GX 18–24, whereas during the second session Cowan caused the child to pose provocatively and even to touch herself, GX 25–34.

Accordingly, this Court should sustain the district court's denial of Cowan's request that it combine Groups Two and Three.

In sum, the district court correctly grouped Cowan's offenses and correctly calculated his adjusted offense levels and applicable guidelines sentence. This Court should deny Cowan any relief on his procedural unreasonableness argument.

**(4)     *In any event, any error by the district court in determining the advisory sentencing range is harmless because the court plainly enunciated its determination that a sentence amounting to a life sentence was required.***

Unless this Court accepts virtually all of Cowan's challenges to the calculation of his offense level, with the result that his offense level falls from level 45 to below offense level 42 (which carries a sentencing range of 360 months' to life imprisonment), this Court should find any error in that calculation harmless and affirm the district court's sentence.[3]

_____

[3]If this Court were to rule in Cowan's favor on all of his Group One arguments, the adjusted offense level for Group One would be 24. (Base offense level 22  + 2 (offenses involved prepubescent minors) + 2 (offenses involved use of a computer) - 2 (offenses limited to receipt/possession) = 24.)

58

"[18 U.S.C. §] 3742(f)(1) does not call for a remand every time a sentencing court might misapply a provision of the [g]uidelines; rather, remand is required only if the sentence was 'imposed as a result of an incorrect application' of the [g]uidelines." *Williams v. United States*, 503 U.S. 193, 202–204, 112 S. Ct. 1112, 1120–1121 (1992).  Accordingly, to determine whether remand is required when there is a guidelines error, this Court must decide based on the record as a whole whether the district court would have imposed the same sentence absent the error.  Fed. R. Crim. P. 52(a); *Williams*, 503 U.S. at 202–204, 112 S. Ct. at 1120-21.  Thus, if a reviewing court can say "with fair assurance … that the sentence was not substantially swayed by the

---

See PSR ¶¶ 29, 30, 33.

    If this Court were to rule in Cowan's favor on all of his Groups Two and Three arguments, the adjusted offense level for both of these groups would be 38.  (Base offense level 32 + 4 (offenses involved minor under age of 12) + 2 (defendant was parent) = 38.)  See PSR ¶¶ 39, 40, 42, 47, 48, 50.

    Because under this scenario the Group One offense level would be more than 9 levels less serious than the Groups Two and Three levels, pursuant to USSG §3D1.4(c), the grouping adjustment would be based on 2 units (+ 2 levels) rather than on 3 units (+ 3 levels), and the greater offense level of 38 would increase to only level 40, which carries an advisory offense level of 292-365 months' imprisonment.

    If this Court also concluded that the district court should have grouped Counts Four and Five, the offense level for the combined Groups Two and Three would be 38, there would be no USSG §3D1.4 adjustment, and the applicable sentencing range would be 235–293 months' imprisonment.

59

error, the sentence is due to be affirmed." *United States v. Williams*, 456 F.3d 1353, 1362 (11th Cir. 2006) (internal quotation marks omitted) (*abrogated on other grounds*, *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007)); *accord United States v. Paley*, 442 F.3d 1273, 1278 (11th Cir. 2006) (district court's misinterpretation of guidelines harmless if it would have imposed same sentence absent error).

Here, Cowan asked the district court to vary downward and to sentence him to no more than 30 years' (360 months') imprisonment, arguing that a life (140-year) sentence would be unreasonably harsh. Doc. 131 at 123–25. The court denied that request, explaining at length its evaluation of the 18 U.S.C. § 3553 sentencing factors, emphasizing the depravity of the child pornography that Cowan had possessed, his abuse of his own very young daughter, and Cowan's being calculating, manipulative, and unremorseful. Doc. 131 at 168–70. The court concluded that Cowan's failure to acknowledge his guilt or his need for recovery or rehabilitation demonstrated that he was "particularly a danger to this community and a person that needs specific deterrence from future criminal activity," and was "an untreated predator who has either deliberately or through some slight of mind developed no insight into his own activities and has exhibited apparently no desire to change those ways." Doc.

60

131 at 168–70.  The court emphasized that it had searched for any ground to vary downward from the guidelines' recommended sentence of life imprisonment but had found no "justifiable reason to impose a lesser sentence."  Doc. 131 at 172–73.

Accordingly, because the district court already evaluated the reasonableness of a sentence of 360 months' imprisonment and found that it could not justify a sentence of less than life imprisonment, this Court should find harmless any error in the district court's calculations of Cowan's offense level; this Court can say "with fair assurance … that the sentence was not substantially swayed by [any] error, [and] the sentence is due to be affirmed." *Williams*, 456 F.3d at 1362.

**C.     The district court's sentence is substantively reasonable.**

For the first time, Cowan argues that his sentence is substantively unreasonable in light of his age and his alleged failing physical and mental health.  Cowan's brief at 53–58.  His attorney did not mention any serious health issues either in Cowan's sentencing memorandum or at his sentencing, and Cowan himself failed to mention any health issues when he addressed the district court in mitigation.  Doc. 120; Doc. 131 at 117–25.  Moreover, without objection, Doc. 131 at 34–35, the PSR reported that Cowan took medication

61

only for a thyroid condition, hypertension, and cholesterol, and reported no serious medical or psychological ailments.   PSR ¶¶ 78, 79.   In any event, Cowan completely has failed to show that his sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) sentencing factors.

This Court reviews the substantive reasonableness of a sentence for abuse of discretion by taking into account the totality of the circumstances. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2007).  How much weight to give each section 3553(a) factor is committed to the sound discretion of the district court, *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008), and the court may "attach 'great weight' to one factor over others," *Shaw*, 560 F.3d at 1237.  "In assessing the factors, the sentencing court should remember that each 'convicted person [is] an individual and every case [is] a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'"  *Id.* at 1237-38 (quoting *Gall v. United States*, 552 U.S. 38, 52, 128 S. Ct. 586, 598 (2007)).  The party challenging a sentence has the burden to show that it is unreasonable in light of the record and the section 3553(a) sentencing factors.  *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007); *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

62

The district court did not abuse its discretion by imposing the statutory maximum sentences for Cowan's convictions, as recommended by the sentencing guidelines.  As in *United States v. Dean*, 635 F.3d 1200, 1210 (11th Cir. 2011), "[t]he record makes clear that the district court considered all the [section] 3553(a) factors and set forth a reasoned basis for its weight of the factors after considering the evidence and arguments before it.  The court then found that the maximum sentence was sufficient but not greater than necessary to comply with the statutory purposes of sentencing," *cert. denied*, 132 S. Ct. 755 (2011).

Cowan argues that he "has demonstrated that he maintains correctional, redeeming, and rehabilitative values," but unsurprisingly, he cites nothing in the record to support this assertion, because the opposite is true.  The district court emphasized that Cowan had possessed the worst kind of child pornography (images involving the violent sexual brutalization of toddlers and very small children), that he had taken pornographic images of his own four-year-old daughter, then had sexually assaulted her, that he had no remorse, and that he had failed to accept any responsibility for his conduct.  Doc. 131 at 162–74.  That Cowan had been able to maintain the facade of being a good educator, family man, and member of the community only adds to his being a

63

danger.  The court properly concluded that Cowan posed a serious threat to the community and deserved the life sentence that the guidelines recommended.  Doc. 168–75.

This Court, therefore, should conclude that the district court did not abuse its discretion in imposing the maximum sentence authorized by law.

## Conclusion

The United States requests that this Court affirm the judgment and order of the district court.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

TODD B. GRANDY
Assistant United States Attorney
Appellate Division

By:    *s/ Judy K. Hunt*
JUDY K. HUNT
Assistant United States Attorney
Appellate Division
Florida Bar No. 309842
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
Telephone: (813) 274-6000
judy.hunt@usdoj.gov

64

## Certificate of Compliance with Type-Volume Limitation

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,486 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

**Certificate of Service**

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF on May 24, 2012, to:

NOEL G. LAWRENCE

*Counsel for Cowan*

By:    s/ Judy K. Hunt
       JUDY K. HUNT
       Assistant United States Attorney

gkpr/no/5/24/12

U:\_Appeal Cases\C\Cowan, Robert_11-15989-F_2009R02697_jkh\b_Cowan, Robert brief FINAL jkh.wpd